PARMANAND RUTTONJEE and Others, Trading under the Firm Name and Style of RUTTONJEE, JEEVANDASS & Co., Respondents, Appellants, *v.* GREGOR MACGREGOR FRAME and Others, Copartners, Trading under the Firm Name and Style of FRAME & Co., Appellants, Respondents.

First Department, May 4, 1923.

**Sales — action to recover for refusal to accept goods shipped from foreign port — question for jury as to meaning of word " afloat " as used in contract of sale — sale was made on c. i. f. contract — shipping documents were tendered while goods were in transit and were refused — second tender made after arrival — sellers entitled to recover difference between contract price and market price at New York on date of arrival and second refusal.**

In an action to recover damages for the refusal to accept goods which were shipped to New York from a foreign port, the court properly submitted to the jury the meaning of the word " afloat " as used in the contract, which stated that the goods were afloat at the time the sale was made, and the verdict of the jury on that question was not against the weight of the evidence.

The sale was made on a c. i. f. contract which passed title to the purchasers who refused to accept the shipping documents which were tendered while the goods were in transit and again refused to accept the goods and documents after the arrival of the goods in New York, on the ground that the sellers had not shipped the goods in accordance with the contract. The refusal being wrongful, the sellers are entitled to recover the difference between the contract price and the market price in New York on the date of the arrival of the goods and the second refusal to accept the shipping documents, and are not limited to a recovery of the difference between the contract and market price in New York upon the date of the first refusal to accept the documents.

PAGE, J., dissents.

APPEAL by the defendants, Gregor MacGregor Frame and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 7th day of April, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 12th day of April, 1922, denying defendants' motion for a new trial made upon the minutes.

Appeal by the plaintiffs, Parmanand · Ruttonjee and others, from said judgment on the ground of insufficiency of damages.

*Gleason, Vogel & Proskauer* [*Joseph M. Proskauer* of counsel; *Charles F. Bailey* with him on the brief], for the plaintiffs.

*Stephen Van Wyck* of counsel, for the defendants.

FINCH, J.:

The action is brought to recover damages for failure to accept and pay for goods sold by plaintiffs to the defendants. On

November 27, 1918, the plaintiffs shipped to New York 1,700 bales of cloves by delivering same on board a certain vessel and receiving bills of lading dated that day. Plaintiffs then cabled to their agent in New York to sell said cloves, and on December 6, 1918, a c. i. f. contract of sale was entered into by said agent for plaintiffs' account with the defendants for 600 bales of said cloves, providing, in so far as material, as follows:

" M. ARACHTINGI.

" Broker in Foreign Dried Fruits.

" 6 Harrison St.

"NEW YORK, Dec. 6th, 1918.

* Triplicate *

" Contract in Triplicate No. 1415.

" Sold to Messrs. FRAME & Co.

" New York, N. Y.

" For account of Messrs. Ruttonjee, Jeevandass & Co.

" Bombay, India.

SIX HUNDRED (600) Bales of about 175 lbs. each Zanzibar cloves at 160/-per cwt. C. I. F. N. Y.

Goods of Good Merchantable Quality Crop 1918 and guaranteed to be passed by the U. S. Dept. of Agriculture.

Shipment: Goods AFLOAT per s/s Kasadomaru.

Marine Insurance to be taken care of by SELLERS, including war-risk.

Terms: Buyers to pay on presentation of Documents.

Accepted Buyer (signed) Frame & Co.

" (signed)    M. ARACHTINGI, *Broker.*"

The shipping documents were presented to the defendants on or about February 21, 1919, together with draft for the amount due, and were refused upon the ground that the sellers had not shipped the goods in accordance with the contract. Upon the arrival of the goods in New York the documents were tendered again, and were refused.

Upon the trial the defendants attempted to justify their refusal to accept solely upon the ground that the goods were not shipped in accordance with the contract, claiming that the use of the word " afloat " meant not merely that the goods had been placed on board ship, but that the ship had sailed and was *en route* to the port of destination. Outside of the question of damages, the issue tendered was the meaning of the word " afloat," as used in the contract and understood in the trade. Conflicting evidence was offered by both sides upon this question, and it was submitted to the jury for determination, and properly so, because the sense

in which it was used was ambiguous and could only be shown by proof of usage or custom in the trade. This is a question of fact. (*Rickerson* v. *Hartford Fire Ins. Co.,* 149 N. Y. 307, 316; *Vietor* v. *National City Bank,* 200 App. Div. 557, 572.) The verdict of the jury was not against the weight of the evidence.

Upon the question of damages the court held that such damages should be computed as of the date when the shipping documents were first tendered and refused, and it was stipulated that the difference between the contract and market price in New York upon that date was $4,972.10, which amount the plaintiffs recovered. By stipulation, also, the difference between the contract price and the market price in New York on the date of the arrival of the goods and the second refusal of the shipping documents, was fixed at $12,572.31, to which latter amount the plaintiffs claim to be entitled.

Under a c. i. f. contract (as here conceded) the title passed to the purchaser, and while primarily the intention of the parties controls, yet the mere fact that the seller takes the bill of lading in his own name, is not sufficient to show a contrary intention. (*Rosenberg Bros. & Co.* v. *Buffum Co.,* 234 N. Y. 338.) In the case at bar the seller drew the bill of lading in the name of the bank at New York, so that there would be even more reason to hold that title passed to the defendant purchasers.

Under section 144 of the Personal Property Law (as added by Laws of 1911, chap. 571), which is a part of the Sales of Goods Act (Pers. Prop. Law, art. 5, as added by Laws of 1911, chap. 571), the seller is given the right to sue for the purchase price of goods sold, where title has passed to the buyer and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract. The seller, however, may waive that right, and under his lien on the goods to secure the payment of the purchase price thereof, may sell the same and hold the buyer for any deficiency. (*Moore* v. *Potter,* 155 N. Y. 481, 486; *Sawyer* v. *Dean,* 114 id. 469.)

It is thus seen that, whether the plaintiff sues for the purchase price or whether the plaintiff sues for damages and sells the goods and recovers the difference between the amount realized in the sale and the contract price, the amount received by the plaintiff is in theory an identical amount and proves the right of the plaintiff to await the arrival of the physical goods in order to ascertain the amount of his damage. If damages are to be awarded to the plaintiff upon the fiction of a sale of the documents immediately upon the refusal of the defendant to accept the documents and pay for the goods at the market price of the goods, then the plaintiff

has lost just so much as is the value of the goods in hand over the value of the goods while still on the high seas, and this through the wrongful act of the defendant. In the case at bar the transaction was not a sale of documents, but a sale of the goods and an agreement to pay for the same upon the presentation of documents. To hold that the defendants are liable only for a sum equivalent to the market value of the goods still upon the high seas as if they had arrived, is to substitute fiction for the facts of the case. Even assuming by way of illustration that the transaction was a sale of documents merely, the damages were not measured by the value of the documents at the time of the breach, of which value there was no proof, but by the market value of the goods as if on hand instead of on the high seas. The goods being on their way to the defendants and payment being refused, plaintiffs had the right of resale. Such conclusion has been enacted into the statutory law, and accords with the rights and remedies of an unpaid seller, where, as here, title has passed, under the Sales of Goods Act (Pers. Prop. Law, §§ 133, 134, as added by Laws of 1911, chap. 571). Section 133 provides as follows:

" § 133. Definition of unpaid seller. 1. The seller of goods is deemed to be an unpaid seller within the meaning of this article

" (a) When the whole of the price has not been paid or tendered.

" (b) When a bill of exchange or other negotiable instrument has been received as conditional payment, and the condition on which it was received has been broken by reason of the dishonor of the instrument, the insolvency of the buyer, or otherwise."

While the language of paragraph (b) of subdivision 1 of said section above quoted does not exactly apply, yet the principle would seem applicable equally to the case of a dishonor of documents on presentation as upon acceptance and subsequent dishonor. Section 134 provides:

" § 134. Remedies of an unpaid seller. 1. Subject to the provisions of this article, notwithstanding that the property in the goods may have passed to the buyer, the unpaid seller of goods, as such, has  *  *  *

" (c) A right of resale as limited by this article."

While it does not appear that the goods in question actually were resold, the parties have stipulated as to the market price on the date of arrival and refusal, which actually is less than the plaintiffs would be entitled to as damages on the basis of a resale since the plaintiffs would be entitled to add the expenses incident to the sale if plaintiffs had in fact sold. (*Lewis* v. *Greider*, 51 N. Y. 231.)

Defendants rely upon *Seaver* v. *Lindsay Light Co.* (233 N. Y.

273), but said case is a case of the breach of a contract by the seller at the port of shipment, and hence has no application to the facts in the case at bar, where the default was not by the seller at the port of shipment but was a default by the buyer on the presentation of the documents at the destination, to which point the goods were then *en route*. To the same effect, namely, a breach by the seller at the point of shipment, is the case of *Standard Casing Co.* v. *California Casing Co.* (233 N. Y. 413). The reason for this rule is obvious when it is considered that, if the seller breaches the contract at the point of shipment, the buyer has an opportunity to protect himself by other purchases at that port at the current market price. Plaintiffs rely upon subdivision 3 of section 145 of the Personal Property Law (as added by Laws of 1911, chap. 571), but this has no application, since said section applies where title has not passed to the buyer.

It follows that the judgment should be increased to $12,572.31, with interest from April 11, 1919, and costs, and the judgment as so modified and the order appealed from affirmed, with costs to the plaintiffs, appellants.

CLARKE, P. J., SMITH and MERRELL, JJ., concur; PAGE, J., dissents.

Judgment modified as stated in opinion and as so modified the judgment and order appealed from affirmed, with costs to the plaintiffs.