FRANCIS A. CUNDILL, Plaintiff, *v.* A. W. MILLHAUSER CORPORATION, Defendant.

Supreme Court, Richmond County, March 3, 1930.

*J. Madison Blackwell*, for the plaintiff.

*Harry Edwards* [*Charles B. Dullea* of counsel], for the defendant.

DIKE, J.   This action is brought under section 144 of the Personal Property Law (added by Laws of 1911, chap. 571), plaintiff seeking to recover the contract price from A. W. Millhauser Corporation, the defendant, for certain antimony sold at New York under a c. i. f. contract.   The parties are merchants of New York city, and on December 31, 1925, they entered into the contract in question whereby the plaintiff agreed to sell to the defendant 25 tons of 2,240 pounds each, of Chinese antimony, c. i. f. New York, shipment promptly from Hamburg, payment net cash against shipping documents payable upon arrival of steamer; terms, among other, " duty for account of buyers, insurance for account of sellers," and there was this further provision in the contract: " variation of ten days in time of shipment or delivery not to constitute grounds for rejection."

The evidence would show that the product arrived by steamer at Hamburg on January 17, 1926, was unloaded before January twenty-first into a lighter which proceeded from the port of Hamburg to Bremen, and placed on the steamer *Hannover* bound for New York.   The American consul at Hamburg certified the shipment and the said steamer sailed on January 24, 1926, for New York, at which port it arrived, after a delay necessitated by a rescue

at sea, on February 11, 1926. The plaintiff notified the defendant on January 28, 1926, that the shipment in question had been shipped from Hamburg, and upon arrival of the goods in the port of New York, it appears that the plaintiff tendered the appropriate documents to this defendant; that the bills of lading were indorsed in blank and would, therefore, convey title. On March 26, 1926, through the medium of counsel for defendant, plaintiff was notified that the defendant refused to carry out the contract, and alleged that the shipment tendered was not a " Hamburg " shipment and that the delay in shipment and in delivery was substantial and " violative of the contract."

It seems that a preliminary phase of this matter came before me in Part 1 upon a motion for judgment on the pleadings made by the defendant and my decision was adverse to the defendant, and upon appeal the Appellate Division sustained the decision in the following brief memorandum: " Order denying defendant's motion for judgment on the pleadings affirmed, with ten dollars costs and disbursements. If there was any ambiguity in the contract, due to the use of the words ' no arrival, no sale,' the intention of the parties can only be determined after a trial of the issues." (*Cundill* v. *Millhauser Corp.*, 219 App. Div. 834.)

It seems to me that this decision settles the question as to whether this action is properly brought by the plaintiff for the purchase price under section 144 of the Personal Property Law. The defendant urges that the plaintiff, under the facts herein disclosed, cannot bring himself within the provisions of this section.

I cannot agree with the contention of the defense, and it seems to me that the case of *Ruttonjee* v. *Frame* (205 App. Div. 354) sustains the plaintiff's contention. In this case the contract was held to be ambiguous in part and the meaning of a certain word " could only be shown by proof of usage or custom in the trade. This is a question of fact." It seems to me that the evidence sustains the contention of the plaintiff and disposes of the question of ambiguity in his favor.

There remains as the chief point of discussion now the situation as to the c. i. f. contract. In the case of *Seaver* v. *Lindsay Light Co.* (196 App. Div. 397), BLACKMAR, J., used these words (p. 398): " The letters ' c. i. f.,' used in executory contracts of sale, have for many years been used in commercial contracts in this country and their meaning is well established. They mean that the goods are to be shipped to an agreed point of destination and that the price which the buyer is to pay includes the cost of the merchandise and the insurance and freight to such point of destination. When the seller has arranged for the freight, has shipped the goods, and

has effected insurance for the benefit of the buyer to the point of destination, he has performed his contract and the buyer is bound to accept and pay the seller's draft with a bill of lading and the insurance certificate attached. If the goods are lost in transit, he must look to the insurance for indemnity, or, in certain circumstances, to the carrier. It is plain that it is within the contemplation of the parties that the buyer shall come into possession of the goods at the point of destination."

The point of destination was clearly the port of New York. We must assume that the defendant wanted the goods or he would not have made the contract; and it would appear to me that by reason of the change of attitude of the defendant, something had caused him to change his mind and that his desire to possess the product no longer existed.

The fourteen-day rule which obtains in shipping contracts like the present one must, in my judgment, be obviously more or less elastic. The very nature of the perils of the sea and explainable delays must give this rule a certain elasticity in its application.

In *Matter of Bullard* (210 App. Div. 467; affd., 240 N. Y. 388) Mr. Justice McAvoy wrote: " The seller by putting the cargo on board and forwarding to the buyer a bill of lading and a policy of insurance of the kind in current customary use in the trade fulfills all of his obligations. Carrying out these obligations constitutes a delivery by the seller under the contract, and title passes to the buyer even though it is stated in the contract that delivery was to be made at the destination point."

It seems to me the seller had done all within his power when he secured the insurance and performed the other acts above mentioned. The phrase, " no arrival, no sale," must yield to the c. i. f. provisions. From the whole case, it seems to me that the plaintiff Cundill completed his contract when he presented the papers in New York city, which I hold to be the destination of the goods: and the case of *Ruttonjee* v. *Frame* (*supra*) supports my conclusion, in my judgment.

I, therefore, hold that on February 11, 1926, upon such presentation of the documents, this plaintiff became entitled to the purchase price of $12,180. The interest having been computed at $2,862.30, I, therefore, direct that judgment be entered in favor of the plaintiff for the sum of $15,042.30, with costs and disbursements.