# THAMES AND MERSEY MARINE INSURANCE COMPANY, LIMITED, v. UNITED STATES.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 616. Argued January 13, 1915.—Decided April 5, 1915.

*United States* v. *Hvoslef, ante,* p. 1, followed to effect that the requirement of § 5 of the Tucker Act, requiring the suit to be brought in the District in which claimant resides, is one of procedure which can be waived and is waived by a general appearance.

Although the Government may assert in its demurrer to an action brought in the District Court for refund of taxes under the Tucker Act that it appears specially, a demurrer which raises not only the question of jurisdiction of the subject-matter of the action but also that of the merits—seeking to obtain a decision on the constitutionality of the tax—is in substance a general appearance and amounts to a waiver of objection with respect to the district in which the suit is brought.

Exportation is a trade movement and the exigencies of trade determine what is essential to the process of exporting.

Insurance against loss is an integral part of exportation and is so vitally connected therewith that a tax on the policies is essentially a tax upon the exportation as such.

Taxes on policies of marine insurance on exports are within the prohibitions of § 9, Art. I, of the Federal Constitution, prohibiting any tax or duty on articles exported from any State; and *held* that amounts paid for stamps on such policies under the War Revenue Act of 1898 were illegally exacted and recoverable under the Refunding Act of July 27, 1902.

217 Fed. Rep. 685, reversed.

THE facts, which involve the construction of § 9, Article I, of the Federal Constitution, prohibiting any tax or duty on exports and the validity of stamp taxes under the War Revenue Act of 1898 on policies of marine insurance on exports, are stated in the opinion.

*Mr. Everett P. Wheeler* for plaintiff in error:

Insurance policies on exports are articles exported. Art. I, § 9, Cl. 5, Fed. Const.

Constitutional prohibition applies when the document taxed is intended to, and does become a part of the business of exporting. *Fairbank* v. *United States*, 181 U. S. 283; *Almy* v. *California*, 24 How. 169; *N. Y. & Cuba S. S. Co.* v. *United States*, 125 Fed. Rep. 320, and see act of Feb. 1, 1909, 35 Stat. 590.

The policy of insurance is a part of the usual commercial documents on the export of goods. *Tamvaco* v. *Lucas*, 30 L. T. Q. B. 234; *Hickox* v. *Adams*, 34 L. T. N. S. 404; Benjamin on Sales, 5th ed., § 590, p. 705; *Mee* v. *McNider*, 109 N. Y. 500; and see act of Sept. 2, 1914 (Public 193), establishing Government War Insurance Bureau.

When these policies were issued to cover exports, they became at once an instrumentality of export and as such were not taxable. *Paul* v. *Virginia*, 8 Wall. 168, distinguished.

The argument that the tax is upon goods within the domestic jurisdiction is rebutted. *Cornell* v. *Coyne*, 192 U. S. 415, distinguished.

In support of these contentions see cases *supra* and *The Antelope*, 2 Ben. 405; *Cunningham* v. *Hall*, 1 Cliff. 43; *Hickox* v. *Adams*, 34 L. T. N. S. 404; *Ireland* v. *Livingston*, L. R. 5 H. L. 395; *Nathan* v. *Louisiana*, 8 How. 73; *People's Ferry Co.* v. *Beers*, 20 How. 393; *Stroms Bruks &c.* v. *Hutchinson*, 1905, App. Cas. 515; *N. Y. Life Ins. Co.* v. *Deer Lodge County*, 231 U. S. 495, distinguished.

*Mr. Solicitor General Davis*, with whom *Mr. Theodor Megaarden* was on the brief, for the United States:

The District Court was without jurisdiction of the action.

The claim of the petitioner was presented to the Commissioner of Internal Revenue and by him rejected. The

remedy of petitioner was therefore an action against the Collector of Internal Revenue and not against the United States.

It does not affirmatively appear that the action was brought in the district in which the petitioner resides.

An allegation that a corporation is doing business in a certain State does not necessarily import that it was created by the laws of that State. *Brock* v. *Northwestern Fuel Co.*, 130 U. S. 341; *Insurance Co.* v. *Francis*, 11 Wall. 210; *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444.

The petition fails to state a cause of action in that it does not show that the tax was paid involuntarily and after protest.

The tax which was imposed upon policies of marine insurance was not unconstitutional.

In *Paul* v. *Virginia*, 8 Wall. 168; *Hooper* v. *California*, 155 U. S. 648; and *N. Y. Life Ins. Co.* v. *Deer Lodge County*, 231 U. S. 495, it has been held that insurance is a mere incident, and not a part of commerce and that the State's power over the subject is absolute and not limited by the interstate commerce clause of the Constitution.

As insurance is not commerce under the interstate commerce clause, it cannot be foreign commerce within the meaning of the clauses exempting exports from a tax by Congress.

The taxes involved in this case affect articles exported in only the most remote and incidental manner, and a provision therefor is no more unconstitutional than an act of Congress in regulation of commerce which has a mere incidental effect upon exportations. *Armour Packing Co.* v. *United States*, 209 U. S. 56, 79–80; *C., B. & Q. Ry.* v. *United States*, 209 U. S. 90; *McLean* v. *Denver & R. G. R. R.*, 203 U. S. 38, 50.

The effect of a contrary holding must not be overlooked. It means the giving of immunity from all taxes of every kind and description, to all property and persons in any

way incidentally connected with foreign trade. See *Turpin* v. *Burgess*, 117 U. S. 504.

A contract of insurance does not in any way assist to carry the goods or to start them on their voyage, nor even to evidence the title thereto, and has no physical relation whatever to foreign commerce.

Mr. Justice Hughes delivered the opinion of the court.

The plaintiff in error is a corporation engaged in the business of underwriting policies of marine insurance. It.brought this action to recover the amount paid as stamp taxes upon policies insuring certain exports against marine risks. The taxes were paid under the War Revenue Act of June 13, 1898, c. 448, 30 Stat. 448, 461; and the recovery was sought under the provisions of the act of July 27, 1912, c. 256, 37 Stat. 240, upon the ground that the tax was invalid, being in substance a tax upon exportation and hence contrary to § 9, Article I, of the Federal Constitution, prohibiting any tax or duty on articles exported from any State.

It was alleged that the policies were issued in the following manner: Open policies were executed by the Insurance Company containing an agreement that the Company would insure all cargoes which the insured should ship in the foreign trade during the life of the policies, and that the shipper would procure such insurance and from time to time would pay the premiums according to the regular rates for the particular voyages. When the shipper had a cargo of goods ready for export, 'designated and set apart from all other goods for shipment on a particular ship,' he filled up certain blank forms of declaration (furnished to him by the Company) in accordance with the facts of each case and delivered the declaration to the Company at or about the time of the sailing of the vessel with the cargo on board. In many cases the declaration

was not delivered until the vessel had sailed. Upon receiving each of the declarations, the Company entered the amount and rate of the premium and delivered to the shipper a certificate of insurance by which the goods described were insured for the voyage and upon the vessel specified. It was further averred that bills of exchange were drawn by the exporters on the consignees of the merchandise for the purchase price, and that the bills of lading and the certificates of insurance were by custom required as the necessary documents to enable the exports to be made and the bills to be discounted; and that these documents were actually forwarded to the foreign country to which the goods were shipped. At the end of each month, the Company rendered to the insured a bill for the premiums which had accrued in accordance with the declarations; and, monthly, the Company presented to the Collector a book containing a summary of the premiums earned in respect of such insurance and purchased the stamps required by the War Revenue Act. By direction of the Collector—in accordance with the method prescribed for mutual convenience by the Commissioner of Internal Revenue—these stamps were affixed to the book and then canceled. In each case, the goods were in fact exported and were insured during their transit by sea to the foreign ports. The claim for the refunding of the taxes was duly presented to the Collector, it was alleged, under the act of 1912, and was transmitted to the Commissioner of Internal Revenue who refused payment.

The Government demurred upon the grounds that the court had no jurisdiction of the defendant, or of the subject of the action, and that the petition did not state facts sufficient to constitute a cause of action. The District Court sustained the demurrer, holding the tax to be a valid one (217 Fed. Rep. 685). Judgment was entered dismissing the petition, and this writ of error has been sued out.

The Government seeks to support the judgment by

denying the jurisdiction of the District Court upon the ground that it was not shown that the petitioner resided within the district (act of March 3, 1887, c. 359, § 5, 24 Stat. 505, 506), as it was not set forth that the petitioner was incorporated in the State of New York (*Shaw* v. *Quincy Mining Co.*, 145 U. S. 444). It was alleged that the petitioner was a corporation and that 'its principal office for conducting said business in the United States and its residence was and is in the Borough of Manhattan, City of New York, in said District.' On behalf of the Company, it is asserted in argument that it is a foreign corporation, that is, foreign to the United States, and hence it is insisted that the provision of § 5 of the Tucker Act is inapplicable (citing *In re Hohorst*, 150 U. S. 653, 660). This question is not here, as the record does not show the place of incorporation. But the contention of the Government is inadmissible for the reason that it does not appear that the objection as to the district was raised below, and the decision of the District Court, which has jurisdiction 'concurrent with the Court of Claims' of the subject-matter of such an action within the prescribed limit as to amount (Jud. Code, § 24, par. 20), was invited upon the merits. The requirement of § 5 of the Tucker Act (which was saved from repeal, Jud. Code, § 297), is one of procedure which could be waived (*United States* v. *Hvoslef, ante,* p. 1), and the question of jurisdiction submitted under the demurrer was deemed by the District Court to be the same as that which had been considered and decided in the *Hvoslef Case* (217 Fed. Rep. 680, 682, 683); that is, as to the authority to entertain a suit against the United States under the act of July 27, 1912, *supra.* While the Government asserted in its demurrer that it appeared specially, it raised by that pleading not simply the question of the jurisdiction of such a suit against the United States but also that of the merits, seeking, and thus obtaining, a decision as to the constitutionality of

the tax and hence of the insufficiency of the facts alleged to support a recovery. Such a demurrer is in substance 'a general appearance to the merits' and is a waiver of objection with respect to the district in which the suit was brought. *Western Loan Co.* v. *Butte Mining Co.*, 210 U. S. 368, 372; *St. Louis &c. Ry.* v. *McBride*, 141 U. S. 127, 130.

The other preliminary questions being identical with those determined in *United States* v. *Hvoslef, supra*, we come at once to the application of the constitutional provision; and upon this point it is unnecessary again to review the decisions establishing the governing principle. There, the question was as to the validity of the tax upon charter parties which were exclusively for the carriage of cargo from state ports to foreign ports, and, here, the question is as to the tax upon policies insuring such exports during the voyage. Is the tax upon such policies so directly and closely related to the 'process of exporting' that the tax is in substance a tax upon the exportation and hence within the constitutional prohibition? It is manifest that we are not called upon to deal with transactions which merely anticipate exportation, or with goods that are not in the course of being actually exported (*Coe* v. *Errol*, 116 U. S. 517; *Turpin* v. *Burgess*, 117 U. S. 504; *Kidd* v. *Pearson*, 128 U. S. 1; *Cornell* v. *Coyne*, 192 U. S. 418). Nor have we to do, in the present case, with the taxation of the insurance business, as such, or with the power of the State to fix the conditions upon which foreign corporations may transact that business within its borders (*Paul* v. *Virginia*, 8 Wall. 168; *Hooper* v. *California*, 155 U. S. 648; *Noble* v. *Mitchell*, 164 U. S. 367; *Nutting* v. *Massachusetts*, 183 U. S. 553; *N. Y. Life Ins. Co.* v. *Deer Lodge County*, 231 U. S. 495). Let it be assumed, as this court has said, that the insurance business, generically considered, is not commerce; that the contract of insurance is a personal contract,—an indemnity against the happening of a contingent event. The inquiry still re-

mains whether policies of insurance against marine risks during the voyage to foreign ports are not so vitally connected with exporting that the tax on such policies is essentially a tax upon the exportation itself.

The answer must be found in the actual course of trade; for exportation is a trade movement and the exigencies of trade determine what is essential to the process of exporting. The avails of exports are usually obtained by drawing bills against the goods; these drafts must be accompanied by the bills of lading and policies or certificates of insurance. It is true that the bills of lading represent the goods, but the business of exporting requires not only the contract of carriage but appropriate provision for indemnity against marine risks during the voyage. The policy of insurance is universally recognized as one of the ordinary 'shipping documents.' Thus, when payment is to be made in exchange for such documents, they are held to include not only a proper bill of lading but also 'a policy of insurance for the proper amount.' *Tamvaco* v. *Lucas*, 1 B. & S. 185, 197, 206. It is not sufficient to tender the bill of lading without the policy. Benjamin on Sales, § 590, note; *Hickox* v. *Adams*, 34 L. T. N. S. 404. The requirements of exportation are reflected in the familiar 'C. I. F.' contract (that is, at a price to cover cost, insurance, and freight), which has 'its recognized legal incidents, one of which is that the shipper fulfils his obligation when he has put the cargo on board and forwarded to the purchaser a bill of lading and policy of insurance with a credit note for the freight, as explained by Lord Blackburn in *Ireland* v. *Livingston*' (L. R. 5 H. L. 395, 406). *Ströms Bruks Aktie Bolag* v. *Hutchison* (1905) A. C., 515, 528. See also *Mee* v. *McNider*, 109 N. Y. 500. It cannot be doubted that insurance during the voyage is by virtue of the demands of commerce an integral part of the exportation; the business of the world is conducted upon this basis. In illustration of this, the appellant appropriately directs

our attention to the recent action of Congress in establishing the War Risk Insurance Bureau, by which the Government itself undertakes to supply insurance against war risks in order to protect exports from the burden of excessive rates. Act of September 2, 1914, c. 293, 38 Stat. 711. In the report of the Committee of the House on Interstate and Foreign Commerce recommending the passage of the bill as an emergency measure, reference is made to the fact that other nations were insuring the vessels and cargoes, under their respective flags against war risks. (House Reports, 63d Cong. 2d Sess., Report No. 1112.) The bill itself recites that the foreign commerce of the United States 'is now greatly impeded and endangered' through the lack of such provision, and that it is deemed 'necessary and expedient that the United States shall temporarily provide for the export shipping trade adequate facilities for the insurance of its commerce against the risks of war.' This is a very clear recognition of the fact that proper insurance during the voyage is one of the necessities of exportation. The rise in rates for insurance as immediately affects exporting as an increase in freight rates, and the taxation of policies insuring cargoes during their transit to foreign ports is as much a burden on exporting as if it were laid on the charter parties, the bills of lading, or the goods themselves. Such taxation does not deal with preliminaries, or with distinct or separable subjects; the tax falls upon the exporting process.

For these reasons, we must conclude that, under the established rule of construction, the tax as laid in the present case was within the constitutional prohibition. *Fairbank* v. *United States*, 181 U. S. 283; *United States* v. *Hvoslef, ante*, p. 1.

*Judgment reversed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of this case.