### HARPER et al. v. HOCHSTIM et al.

(Circuit Court of Appeals, Second Circuit. December 14, 1921.)

No. 55.

1. **Sales ☞162—C. i. f. sale to be executed by delivery of title documents, and not physical delivery of goods.**

   A contract of sale c. i. f. is to be accomplished or executed by the delivery of a bill of lading and policy of insurance, and usually additional papers, and not by physical delivery of the actual goods, and the buyer cannot refuse the documents and demand the goods, or the seller withhold the documents and tender the goods.

2. **Courts ☞372 (4)—Construction dependent on whether contract was one of sale c. i. f., not governed by state statutes.**

   The construction of a contract of sale, dependent on whether it was a sale c. i. f., is one of general law, if not of general commercial law, and unaffected by any statute of the state of New York, in which the contract was made, including the Sales of Goods Act, even assuming that the place of execution furnished the law of the contract.

3. **Sales ☞162—Contract held a c. i. f. sale, and not performed by tender of property, notwithstanding provision as to insurance.**

   Under a contract of sale for a specified price c. i. f. New York, shipment to be made from China, the sale was a c. i. f. sale, and the seller did not tender performance by purchasing goods in New York and tendering them to the buyer, though the contract further provided that, if the goods were damaged in transit, the buyer would accept the same percentage of allowance secured by the seller from the insurers, as the seller might act as the buyer's agent in procuring the insurance.

4. **Contracts ☞161—No part disregarded, unless no rational interpretation will render it effective.**

   It is only when parts of a written agreement are so radically repugnant, that there is no rational interpretation that will render them effective and accordant, that any part must perish.

5. **Contracts ☞163—Written portions prevail over printed parts.**

   In case of inconsistency, the written portions of a document, in the absence of proof to the contrary, will prevail over the printed parts.

6. **Contracts ☞147 (1)—Rules of construction only resorted to to effect intent.**

   The intent of the parties to a contract is the fundamental guide in construction, and rules of construction are only resorted to to effect such intent.

In Error to the District Court of the United States for the Southern District of New York.

Action by J. Ralph Harper and another, copartners doing business as Ralph Harper & Co., against Adolph Hochstim and another, copartners doing business as Hochstim & Bossak. Judgment for defendants on demurrer, and plaintiffs bring error. Affirmed.

The parties hereto entered into a contract evidenced by a document, whereof the material parts are as follows (the italicized portion being written, and the rest a printed form):

"New York, *February* 16, *1920*. According to this convention, written and signed in duplicate, the seller, *Ralph Harper & Co., of Tientsin, in China, sells to Hochstim & Bossak* the quantity of about 30,000 *Shantung weasels with tails.* Shipments from *China* per steamer direct or indirect to *New York during March and/or April.* Price: $2.45 *each C. I. F. New York.* Import duty, if any, to be paid by the buyer. Payment: *Four* m/s confirmed banker's letter of credit $73,500 to be opened by the buyer in favor of and to be approved by the seller. Letter of credit to be *telegraphed* within two days *after confirmation.* * * *. In case of a c. i. f. sale and the goods are damaged while in transit, the buyer agrees to accept in settlement thereof the same percentage of allowance as the seller may secure from the insurers by way of settlement of recovery."

The sellers were in China; the above contract was signed on their behalf by an agent, and the printed form used was the agent's form.

Plaintiffs (the sellers) never shipped any weasel skins under this contract, but on June 25, 1920, they obtained in New York 10,000 weasel skins of the kind contracted for and tendered them to the buyers, who refused the same. The sellers then brought this action, alleging that the weasel skins tendered had been shipped from China (though not by them) to New York, via Seattle, and further asserting that they "would and could have obtained and delivered to defendants" the remaining weasel skins "within the reasonable time for delivery in New York of March or April shipments by steamer from China."

The complaint further asserted that the weasel skins actually tendered "were insured in the amount and against the risks usual in an ordinary c. i. f. contract under a policy payable to the plaintiffs," and finally alleged a "general custom and usage among the dealers in furs in New York City" to the effect that shipments such as above contracted for permitted "shipments from China by steamer to San Francisco and Seattle and thence overland by freight to New York." This custom is said in the pleadings to have been "well understood by both parties" to the above contract.

The breach alleged is the refusal of the buyers to accept the weasel skins tendered, and their refusal to accept any skins so obtained in New York and tendered as were the 10,000 above mentioned.

To this complaint defendants demurred, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer prevailed, and to judgment accordingly plaintiffs brought this writ.

Stockton & Stockton, of New York City (Kenneth E. Stockton, of New York City, of counsel), for plaintiffs in error.

Jacob Newhouse, of New York City (Sidney Rosenbaum, of New York City, of counsel), for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The allegation of custom, or, properly speaking, of usage (Eames v. Claflin, 239 Fed. 631, 152 C. C. A. 465), need not be considered; for, if plaintiff did not tender what he agreed to sell, the manner of his shipment is of no importance. The only question in the case is as to the nature of the contract admittedly made.

[1] If that contract is for what is now widely known as a "sale c. i. f.," such sale was by specific agreement to be accomplished or executed by the delivery of documents by vendor to vendee, and not by the physical delivery of the actual goods for which the documents are the evidence of title. The bargain must be kept as made; the buyer can no more refuse the documents and ask for the goods than can the seller

withhold the documents and tender the goods; and the documents necessary are a bill of lading and policy of insurance, although additional papers, especially an invoice, are usual. The foregoing is now too well settled to need more than reference to Thames, etc., Co. v. United States, 237 U. S. 19, 26, 35 Sup. Ct. 496, 59 L. Ed. 821, Ann. Cas. 1915D, 1087, and cases there cited; Landauer v. Craven, 2 K. B. 94 (1912); Manbree Co. v. Corn Products, 1 K. B. 198 (1919); Setton v. Eberle Co., 258 Fed. 905, 169 C. C. A. 625; Klipstein v. Dilsizian (C. C. A.) 273 Fed. 473; Smith Co. v. Moscahlades, 193 App. Div. 128, 183 N. Y. Supp. 500, and cases there cited.

[2] This question of construction is one of general law, if not general commercial law, and unaffected by any statute of New York, especially the Sales of Goods Act (Consol. Laws, c. 41, §§ 82–158), even assuming that the place of execution of agreement furnishes the law of the contract. That the Sales Act left c. i. f. contracts "as before" was specifically held in Smith v. Moscahlades, supra.

[3] We are thus required to construe or interpret a commercial or mercantile agreement partly written and partly printed, wherein at the very beginning it is written that the price is to be "c. i. f. New York," and the shipment from China; but later follow printed words plainly implying that the seller is not only to procure insurance, but collect from the insurers, and therefore suggesting that such insurance would naturally be in the seller's name. It is urged that this latter proviso is so repugnant to the nature of a c. i. f. contract as to transform it into something else, and justify a tender of goods in New York, instead of a delivery of documents by mailing in China.

[4] It cannot be doubted that it is only when parts of a written agreement are so radically repugnant that "there is no rational interpretation that will render them effective and accordant that any part must perish." Rushing v. Manhattan, etc., Co., 224 Fed. 74, 139 C. C. A. 520. Applying this rule, it must be admitted that for the seller under a c. i. f. contract to insure in his own name is an apparent departure from the theory of such a sale; for the goods are the buyer's from and after delivery of documents, yet it is perfectly possible for the seller or any one else to act as buyer's agent and validly insure for his principal's benefit (Hooper v. Robinson, 98 U. S. 528, 25 L. Ed. 219), and the whole of this agreement may be consistently regarded as containing an authorization from buyer to seller to get the insurance and in case of loss settle for the buyer with the underwriters. As the case cited shows, and it is matter of common knowledge, insurance for "account of whom it may concern" was known to be procurable, and it might run to seller, yet inure to buyer. There is no radical repugnancy here presented, and the reconcilement above suggested is far less difficult than in many reported cases, of which Harding v. 4698 Tons of Coal (D. C.) 147 Fed. 971, is a fair example.

[5] But, if inconsistency be still insisted upon, the equally settled rule that the written portions of a document, in the absence of proof to the contrary, will prevail over the printed parts, may be appealed to. Lipschitz v. Napa, etc., Co., 223 Fed. 698, 704, 139 C. C. A. 228; Thomas v. Taggart, 209 U. S. 385, 389, 28 Sup. Ct. 519, 52 L. Ed. 845. The reason for this rule has never been better stated than by Lord Halsbury

in Glynn v. Margetson, App. Cas. (1893), at page 357, quoting largely from Lord Ellenborough's rulings of 1803. This rule plainly gives decision as it was given below.

A still older rule in the construction of instruments inter vivos is that the earlier of two supposedly inconsistent clauses prevails over the later; and this canon of interpretation has lately been insisted on by high authority. Vickers v. Electrozone, etc., Co., 67 N. J. Law, 665, 675, 52 Atl. 467. It also supports defendant's demurrer.

[6] But a dependence upon rules, which, detached from the circumstances surrounding and justifying their formulation, often seem arbitrary, is unsatisfactory; every rule should be one of reason. Here the first and reasonable inquiry is: What is the dominant or leading thought revealed by this writing, read with the eye of experience? Plainly that seller was to ship the furs and send the documents ahead by mail, so that buyer could, if he wanted, sell the goods again "to arrive." That is a c. i. f. contract. Therefore the parties intended to make that sort of agreement, and the "rules" are resorted to to effect their intent. This is the fundamental guide in construction; it is well put (with an extreme application thereof) in Morrill Co. v. Boston, 186 Mass. 217, 71 N. E. 550, by saying that, where—

"a repugnancy is found between clauses, the one which essentially requires something to be done to effect the general purpose of the contract itself, is entitled to greater consideration than the other which tends to defeat a full performance; and repugnant words may be rejected in favor of a construction which makes effectual the evident purpose of the entire instrument."

The evident purpose of this agreement was to give buyer substantially what a c. i. f. sale would have given him; the seller never even attempted to put buyer in that desired and agreed upon position, and the decision below was right, because the contract was of the kind known as c. i. f.

Judgment affirmed, with costs.