## JOHNSON & HIGGINS v. CHARLES F. GARRIGUES CO. et al.

District Court, S. D. New York. August 17, 1927.

**1. Sales ⬦201(5)—Contract providing for cash against shipping documents on arrival of goods was not "c. i. f. contract."**

Contract for purchase of goods—reading "Terms of payment: Net cash against Norwegian shipping documents in New York on arrival of the goods"—could not have been executed by delivery of documents by seller to buyer at any time prior to arrival of merchandise at port of destination, and if goods had failed to arrive loss would not have been on purchaser, and contract was not "c. i. f. contract."

**2. Principal and agent ⬦169(2)—Sales ⬦162—Under contract buyer had to pay for goods on board ship after arrival, although portion was destroyed, and was liable on average agreement signed by agent.**

Course of action of parties, where buyer paid, not only for salvaged goods in shipment, but for those that were destroyed as well, and assigned to seller for collection its claim against insurer of goods, showed intention of parties under original purchase contract that, after goods actually arrived within free lighterage limits of port, and on tender of documents, buyer's obligation was to take up papers and pay purchase price of goods, even though, after arrival, portion of merchandise was destroyed, so that buyer was liable on average agreement for proportion of cost of saving cargo signed by its purported agent.

**3. Principal and agent ⊝169(2)—Buyer, knowing of damage to goods on board ship, paying original price, ratified purported agent's act in signing average agreements.**

Where buyer, with full knowledge of loss and damage to part of its goods on board ship, paid original price therefor, it should be deemed to have ratified act of agent of seller, purporting to act as agent for buyer in signing average agreements with insurance adjusters for payment of ratable proportion of cost of services rendered in saving cargo and in procuring release of same from salvage claims.

**4. Insurance ⊝104—In absence of agreement for delivery of insurance policy, seller's delivery of certificate that insurance on goods in ship was effected is good delivery.**

In absence of seller's specific agreement to deliver insurance policy on goods on board ship, delivery of certificate that insurance has been effected is good delivery.

**5. Sales ⊝202(5)—Where goods were to be delivered ex vessel on arrival duty paid, payment on delivery, until events took place, title remained in shipper.**

Where goods under contract were to be delivered ex vessel on arrival at New York duty paid, and payment on delivery was to be in cash, until these concurrent events took place, title remained in shipper of goods.

In Admiralty. Libel by Johnson & Higgins, as trustee, against the Charles F. Garrigues Company, in which the Norwegian Nitrogen Products Company and others were impleaded. Decree in accordance with opinion.

Bigham, Englar & Jones, of New York City (T. Catesby Jones, of New York City, of counsel), for libelant.

Rumsey & Morgan, of New York City (Mark W. Maclay and John Tilney Carpenter, both of New York City, of counsel), for respondents.

KNOX, District Judge. [1] While the contract for the purchase of the goods moving to Hercules Powder Company possesses some of the characteristics of a true c. i. f. contract, the clause which reads: "Terms of Payment. Net cash against Norwegian shipping documents in New York on arrival of the goods"—would seem to remove it from that category. I mean that the contract could not have been executed by a delivery of documents by vendor to vendee at any time prior to arrival of the merchandise at the port of destination. If the goods had failed to arrive, the loss would not have been on the purchaser. That result is contrary to one of the incidents of a true c. i. f. contract. Thames & Mersey Ins. Co. v. United States, 237 U. S. 19, 35 S. Ct. 496, 59 L. Ed. 821,

Ann. Cas. 1915D, 1087; Harper et al. v. Hochstim et al. (C. C. A.) 278 F. 102, 20 A. L. R. 1232. See, also, Klipstein & Co. v. Dilsizian (C. C. A.) 273 F. 473.

This contract contemplated actual arrival of the goods, and, until that event should occur, it was not intended that title to the goods should pass to the vendee. The shipping documents, although they had been in the hands of the vendor's agents for several weeks prior to the arrival of the goods, and although they called for the payment of more than $300,000, were not tendered to the buyer until after the arrival of the vessel carrying the merchandise. Had there been any thought that the consignment while in transit was at the risk of the buyer, it is fair to assume that the documents would have been tendered, and payment of the invoices demanded upon receipt of the papers from abroad.

[2] But, upon arrival of the goods, and the tender of the documents, the parties did intend that title should pass to the buyer. This, I think, is reasonably clear from the terms of the purchase contract now about to be quoted:

"Place of delivery: C. i. f. New York, duty, if any, and war risk insurance for account of the buyer.

"Price: Eight cents (8¢) per lb. c. i. f. New York free lighterage limits. See note. * * *

"Note.—Should probable freight saving mentioned in cable from Kristiania, Norway, dated January 6, be consummated, it is to be for the benefit of the buyers, and every effort is to be made to consummate same. * * * The payment clause shall be regarded as forming an essential part of the contract."

In other words, the purchaser was to pay the duty and land the goods, once they arrived within free lighterage limits of this port, and the buyer was to have the benefit of any saving on freight that might have been secured over that upon which the parties had originally made their calculations. It was also specifically agreed that the payment of the purchase price should be due upon the tender of the Norwegian shipping documents after arrival of goods.

That such construction of the contract was in the mind of the parties is borne out by the fact that within a day or two after the arrival, and immediately after the explosion that destroyed a portion of the consignment, a tender of the documents was made, and payment demanded of the in-

voices. The demand was rejected only because of the fact that the buyer wished to be satisfied that the insurance certificate, which accompanied the invoices and bills of lading, covered salvage and general average claims, as well as other maritime perils.

Before the seller and the purchaser reached an understanding on this feature of the case, the agent of the seller, who negotiated the contract of sale, purporting to act as the agent of the buyer, signed the average agreements with the insurance adjusters for the payment of a ratable proportion of the cost of services rendered in saving the cargo. Upon one of the agreements thus signed, the effort is now made to hold the Hercules Powder Company as owner of a portion of the cargo.

Whatever interpretation may be placed upon the original contract, the fact remains that Hercules Powder Company came into possession of all the goods saved from the Hallfried, and which were intended for that company. And, when assured as to the risks covered by the insurance certificate, it paid, not alone for the salvaged goods, but for those that were destroyed as well, and finally assigned to the seller, for collection, its claim against the insurer of the goods. This course of action, it seems to me, sufficiently indicates the intention of the parties, under the original contract, that after the goods actually arrived within the free lighterage limits of this port, and upon tender of documents, the buyer's obligation was to take up the papers and pay the purchase price of the goods, even though, after arrival, a portion of the merchandise was destroyed; and, further, that what was done by the nominal consignee of the goods towards releasing the salvaged goods from the lien of the general average claims, and the obligation assumed in reference thereto, should be held to have been for account of Hercules Powder Company, the beneficiary of the acts of Charles F. Garrigues Company, the consignee named in the bills of lading.

[3] When Hercules Powder Company, with full knowledge of loss and damage to a part of its goods on board the Hallfreid, dealt with the same in its subsequent agreements with the Nitrogen Products Company, and paid the original price therefor, it should be deemed to have ratified what was done by Charles F. Garrigues Company in procuring the release of the same from the salvage claims that had attached thereto.

[4] Of the contention of Hercules Powder Company that the seller defaulted in the performance of its contract in tendering a certificate of insurance on the goods, as distinguished from a formal policy, it may be said that this record supports the conclusion that, in the absence of a specific agreement for delivery of an insurance policy, the delivery of a certificate that insurance has been effected is customary, and is regarded as a good delivery. Furthermore, the Hercules Powder Company, in accepting the delivery of documents on a shipment carried by another steamship, made no point that a certificate of insurance, instead of a policy, was not a good tender. See Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter (D. C.) 299 F. 991. It failed to do so, no doubt, in recognition of the custom that seems to have prevailed in this port.

The powder company also raises objection to a recovery against it on the ground that libelant, having a right to seek payment from the owner of the goods and its alleged agent, elected to hold the latter, and cannot, therefore, obtain the decree now asked. Without discussing the details of this objection, I am satisfied to rule that it is without merit, and it will accordingly be overruled.

Nitrogen Products Company, Inc., admits ownership of 17 casks of nitrate of soda, which were saved from destruction, and with respect to which Charles F. Garrigues, an agent of the owner thereof, signed an average agreement. It also admits the agency of that company. In view of these admissions, there is no need to set forth the details of this consignment.

[5] As to the claim made on 94 casks of nitrate of soda, which were on board the vessel, for Garrigues Industrial Products Corporation, it plainly appears that, at the time of the fire, the title to this material was in Norsk Hydro-Electrisk Kvaelstofaktieselskab, the shipper of the goods. These casks, under the contract, were to be delivered "ex vessel on arrival at New York, duty paid," and payment upon delivery was to be in cash. Until these concurrent events should take place, the title remained in the shipper of the goods.

A decree in accordance with the foregoing opinion will be passed.