## THE W. FERDINAND ARMSTRONG.

## EASTERN GAS & FUEL ASSOCIATES v. HOWARD.

District Court, S. D. New York.
Oct. 8, 1946.

Macklin, Brown, Lenahan & Speer, and Gerald J. McKernan, all of New York City, for libellant.

Purdy & Lamb, of New York City, for respondent.

RIFKIND, District Judge.

The preponderance of the credible evidence sustains the allegations of the libel as to the unseaworthiness of respondent's barge, W. Ferdinand Armstrong, which lost a cargo of coal put aboard her for carriage from Pier 18, Jersey City to New Haven, Connecticut. The only issue which requires examination is whether libellant has established its ownership of the cargo as alleged in the libel. The respondent contends that at the time of the loss property in the coal had passed to Connecticut Coke Company, the buyer and consignee.

The agreement for the sale of the coal was made in Pennsylvania between the libellant, as seller, and Connecticut Coke Company of New Haven, Connecticut, as buyer, "delivered free alongside Buyer's dock at New Haven, Connecticut."

The problem of which law governs the interpretation of this agreement need not be resolved, as Pennsylvania, Connecticut and New York have all enacted substantially the same relevant provisions of the Uniform Sales Act. Purdon's Penn. Statutes Annotated, Perm. Ed. Title 69, § 143, Rules 4 and 5; § 256; General Statutes of Conn., Revision of 1930, Title 44, ch. 232, § 4639, Rules 4 and 5; § 4666; New York Personal Property Law, § 100, Rules 4 and 5, § 127, subd. 1.

Respondent relies on § 100, Rule 4, of the New York Personal Property Law. It provides that when goods in a deliverable state are unconditionally appropriated to the contract, property in the goods passes to the buyer; and that when the seller delivers the goods to a carrier he is presumed

to have unconditionally appropriated the goods to the contract "except in the cases provided for in the next rule." The next rule, Rule 5, provides: "If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

It is respondent's contention that despite the language "free alongside Buyer's dock at New Haven, Connecticut", this is not an F.A.S., but a C.I.F. contract. He would so construe the agreement because it provides that the price is $8.082 per gross ton plus property transportation tax of $0.04 per ton, plus actual cost of Marine and War Risk Insurance and that, in the event shipment is made via routes other than those specified in the agreement, buyer will pay the increased cost or be credited with any decrease in cost. These provisions, according to respondent, supply the elements of cost, insurance and freight of the C.I.F. contract. But the respondent is mistaken. The significant question is not whether the selling price reimburses the seller for the expenses of freight and insurance. Presumably, unless a sale is at a loss, the seller is always reimbursed for such expenditures by the selling price. In the instant case, the provision for calculating the price would be irrelevant if in fact the buyer were paying freight and insurance. In that event the price would be fixed and the cost of insurance and freight would be the buyer's concern. And from the imposition of responsibility upon the buyer

we would draw the inference that title had passed by delivery to the carrier. In the case at bar it is plain that freight and insurance were the seller's concern and being his concern he takes care to be reimbursed in the price. The proper inference is, therefore, that property remained in the seller until the goods were delivered free alongside buyer's dock.

The authorities cited by respondent do not assist him.

Smith Co., Ltd. v. Moscahlades, 1920, 193 App.Div. 126, 183 N.Y.S. 500, and Seaver v. Lindsay Light Co., 1922, 233 N.Y. 273, 135 N.E. 329, were concerned with straight C.I.F. contracts.

Thames & Mersey Marine Ins. Co. v. United States, 1915, 237 U.S. 19, 26, 35 S. Ct. 496, 59 L.Ed. 821, Ann.Cas.1915D, 1087, defines a C.I.F. contract and its legal incidents. It does not aid the respondent's position. In The Hans Maersk, 2 Cir., 1920, 266 F. 806, the court considered a contract which required the seller to ship sugar to New York for a price which included freight. The buyer undertook to take out marine insurance. The court held these provisions to constitute a C.I.F. contract. It said (266 F. at page 811): "This particular contract requires the buyers to take out insurance, and so shows the intention of the parties to pass the title to them" on delivery to the carrier. No such insurance provision is incorporated in the contract under examination.[1]

I have, therefore, concluded that property in the coal had not passed from the seller at the time of the loss, and that libellant is entitled to a decree.

[1] " * * * the fact that a price quoted by seller includes not simply the cost of the goods but the freight thereon or even insurance, and is called by the parties a C.I.F. contract will not prevent an agreement between the parties that the risk shall be on the seller. In a C. I.F. contract, however, the question may be asked why should the buyer provide for insurance unless the risk of loss falls on him. * * * Whether contracts with the inconsistency alluded to are due to a failure to understand the established inferences of a C.I.F. contract or to a desire to modify those inferences, such contracts have not been uncommon in the United States". Williston, Sales, 2d Ed. § 280f.