NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0320n.06

No. 09-1786

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**May 26, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| AMMEX, INC., | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JOHN DURANT, WILLIAM | ) | DISTRICT OF MICHIGAN |
| MORANDINI, and JOHN DOES, | ) | |
| Unknown Agents of the U.S. Bureau of | ) | |
| Customs and Border Protection, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |

Before:      **KENNEDY** and **COLE**, Circuit Judges; **JORDAN**, District Judge.[*]

**LEON JORDAN**, District Judge.  Appellant Ammex, Inc. appeals the district court's dismissal of its complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ammex alleges a *Bivens* cause of action based on the appellees' denial and subsequent revocation of Ammex's authorization to sell duty-free motor fuel.  The district court granted the appellees' motion to dismiss based on qualified immunity.  For the reasons that follow, we affirm.

---

[*] The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

No. 09-1786
*Ammex, Inc. v. Durant, et al.*

## I.

This long-standing dispute has given rise to at least six published opinions: three by the United States Court of International Trade, two by the United States Court of Appeals for the Federal Circuit, and one by a prior panel of this court. Much of the relevant background is well-summarized in the Federal Circuit's second opinion.

> Ammex operates a duty-free store, *i.e.*, a Class 9 Customs bonded warehouse, and gas station, at Ambassador Bridge between Detroit, Michigan and Windsor, Ontario. The geography offers no direct physical route for products stored or sold at the store to enter the United States. Thus, cars entering the gas station must proceed into Canada upon exit. In other words, the products sold in the store must be exported.
>
> Ammex has long confronted Customs over the question of duty-free import of fuels. In late 1993 and early 1994 Ammex requested approval to add gasoline and diesel fuel to its duty-free offerings. In June 1994, Customs denied that request. Customs explained in its denial that fuel is an "unidentifiable fungible" good that could be reimported without any way for Customs to collect duties.
>
> After Customs affirmed its decision in a second opinion letter, Ammex brought the case to the Court of International Trade. In August 2000, that court declared unlawful Customs' prohibition on selling fuel duty-free. The court pointed out that the statute that governed duty-free treatment of warehoused merchandise specifically excluded only perishable articles and explosives, but not diesel fuel and gasoline. *Ammex I*, 116 F. Supp. 2d at 1273. The court refused to allow Customs to expand the statutory exemption to exclude "unidentified fungibles." *Id.* Therefore, on September 5, 2000, Customs granted Ammex permission to bring its fuel supplies within its bonded warehouse "in order to facilitate the immediate availability of the bonded fuel for sale."
>
> In October 2000, Ammex asked Customs to confirm that fuel sold at its Ambassador Bridge facility would not be subject to taxes at the time of bonded entry into the United States. Customs forwarded the request to the Internal

No. 09-1786
*Ammex, Inc. v. Durant, et al.*

Revenue Service (IRS). The IRS declined to make a formal ruling on the question in the absence of a formal request. Instead, the IRS offered Ammex "general information [that may] be useful to you." This information was that "Section 4081 of the Internal Revenue Code imposes a tax on certain removals, entries and sales of taxable fuel."

Customs immediately revoked its permission for duty-free sales, because "the imported gasoline and diesel fuel in issue here was assessed with a tax under 26 U.S.C. 4081 . . . . Consequently that fuel does not meet the statutory definition of duty-free merchandise . . . ."

Ammex returned to the United States Court of International Trade, asking it to find Customs in contempt for revoking the authorization that followed the decision in *Ammex I*. The trial court denied that motion in February, 2002. *Ammex, Inc. v. United States*, 193 F. Supp. 2d 1325 (Ct. Int'l Trade 2002) (*Ammex II*). On appeal, this court affirmed the decision in *Ammex II*. 334 F.3d 1052 (Fed. Cir. 2003) (*Ammex III*).

Ammex then brought the present action in the Court of International Trade under 28 U.S.C. § 1581(i) and the Administrative Procedures Act, 5 U.S.C. § 706(2)(A). The trial court found in favor of Ammex, reasoning that "it was error for Customs to issue the Revocation Ruling without first ascertaining whether any taxes had been assessed on Ammex's fuel." *Ammex, Inc. v. United States*, 341 F. Supp. 2d 1308, 1312 (Ct. Int'l Trade 2004) (*Ammex IV*).

. . .

. . . [T]he judgment of the Court of International Trade [*Ammex IV*] . . . is affirmed.

*Ammex, Inc. v. United States*, 419 F.3d 1342, 1343-44, 1346 (Fed. Cir. 2005) ("*Ammex V*").

Appellee John Durant is the former Director of the Commercial Rulings Division of the United States Bureau of Customs and Border Protection ("Customs"), and appellee William Morandini is a former District Director of Customs. By a December 1993 letter, Morandini sought additional information from Ammex regarding its request to sell duty-free

fuel. Morandini was "not aware of any current bonded operations which dispense fuel to trucks and automobiles," and he advised that the requested information would be "forward[ed] for legal review."

After receiving Ammex's response, Morandini submitted a detailed memorandum to the Customs Office of Regulations and Rulings "request[ing] internal advice concerning a proposal to sell 'duty free' gasoline and diesel fuel. . . . It was decided to request this internal advice since there is presently no other facility, along either the Northern border or the Southern border, dispensing duty free fuel." In June 1994, Durant issued a five-page response memorandum concluding that fuel cannot be sold duty-free. Ammex sought reconsideration in 1995, 1996, and 1997. In February 1998, Durant issued a eight-page letter considering Ammex's arguments but ultimately reaffirming Customs' prior denial. Durant based his rulings on the "unidentifiable fungibles" rationale subsequently rejected by *Ammex I*.

It was also Durant who, in reliance on the post-*Ammex I* IRS letter, revoked Ammex's permission to sell duty-free fuel. By notice dated June 1, 2001, he sought comment on that proposed decision. Durant made the revocation final by notice dated November 1, 2001.

In addition to the litigation taking place in the Court of International Trade and the Federal Circuit, in 2000 Ammex filed suit against the IRS in district court. Ammex sought to recover over $600,000.00 in fuel excise taxes paid through mid-1999. The district court granted summary judgment in favor of the IRS, holding that Ammex lacked standing because

the excise taxes at issue were actually paid by a supplier rather than by Ammex. *See Ammex, Inc. v. United States*, No. 00-CV-73388, 2002 WL 32065583 (E.D. Mich. July 31, 2002). A prior panel of this court affirmed that ruling. *See Ammex, Inc. v. United States*, 367 F.3d 530 (6th Cir. 2004).

In 2008, Ammex brought the present action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that the appellees, via the initial denial and the subsequent revocation, had violated Ammex's rights under the Export Clause and the Fifth Amendment to sell duty-free fuel.[1] The district court granted the appellees' Rule 12(b)(6) motion to dismiss on the basis of qualified immunity, holding that Ammex's rights were not clearly established at the time of the alleged violation:

> Durant and Morandini, the defendant Customs officials, made their decision to revoke Ammex's authorization to sell duty-free gas in reliance on a letter from the IRS. The Federal Circuit stated that Customs' decision to revoke Ammex's authority to sell duty-free gas was reasonable because of the IRS's guidance. . . . In addition, defendants revoked Ammex's authority in a procedurally transparent and open way, following Customs' published notice. Discretion is given to Durant and Morandini by the Tariff Act which they interpreted.

> The Court of International Trade stated that this case presented "unique facts" and "unique circumstances," and this Court agrees. This is not the type of case where any reasonable official would know he or she was violating a clearly established right.

---

[1] A *Bivens* claim seeks money damages individually from a federal agent for injuries resulting from a constitutional violation caused by the exercise of the agent's federal authority. *See Dolan v. United States*, 514 F.3d 587, 594 n.2 (6th Cir. 2008).

No. 09-1786
*Ammex, Inc. v. Durant, et al.*

*Ammex, Inc. v. Durant*, No. 08-CV-13120, 2009 WL 1124470, at *5-6 (E.D. Mich. Apr. 23, 2009). Ammex now appeals that decision.

**II.**

We review *de novo* a district court's dismissal of a complaint under Rule 12(b)(6). *See Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009). A district court's finding of qualified immunity is also reviewed *de novo*. *See Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

**III.**

Governmental officials performing discretionary functions are generally granted qualified immunity "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding claims of qualified immunity, we consider whether, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *modified on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009). We must also consider whether the right was clearly established at the time of the alleged violation. *Saucier*, 533 U.S. at 201. It is "often appropriate," but no longer mandatory, to analyze *Saucier's* two prongs in the order set forth above. *Pearson*, 129 S. Ct. at 818.

The "clearly established" inquiry "must be undertaken in light of the specific context of the case," considering the objective reasonableness of the actor's conduct at the time the

events occurred. *See Saucier*, 533 U.S. at 201-07. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

The Export Clause of the United States Constitution provides, "No Tax or Duty shall be laid on Articles exported from any State." U.S. Const. art. 1, § 9, cl. 5. Duty-free goods are sold "for export from the customs territory" and are not subject to federal duty or tax. *See* 19 U.S.C. § 1555(b)(1). Based on these constitutional and statutory provisions, the district court concluded that Ammex has a right to sell duty-free fuel.

Dismissal of the complaint was based on Ammex's failure to satisfy *Saucier's* second prong, that the right was clearly established at the time of the alleged violations. "The standard is one of objective reasonableness, analyzing claims of immunity on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant's position could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray v. City of Sandusky*, 49 F.3d 1154, 1158 (6th Cir. 1995).

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent. [O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. To determine whether a right is "clearly established," we must first look to decisions of the Supreme Court, then to decisions of this Court and courts within this Circuit, and last to decisions of other circuits.

No. 09-1786
*Ammex, Inc. v. Durant, et al.*

*Ciminillo v. Streicher*, 434 F.3d 461, 468 (6th Cir. 2006) (citations and quotations omitted). Rather than "alleging violation of extremely abstract rights[,] . . . these decisions must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177 (6th Cir. 1988) (citing and quoting in part *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

The authorities cited by Ammex would not have "point[ed] unmistakably to the unconstitutionality of the conduct complained of" in this dispute. *A.G. Spalding & Brothers v. Edwards* involved a War Revenue Act tax laid on baseball bats exported from New York, 262 U.S. 66 (1923), and *United States v. United States Shoe Corp.* involved a Harbor Maintenance Tax on goods exported from ports. 523 U.S. 360 (1998) (opinion postdates Morandini's conduct). *United States v. International Business Machines* involved a tax on insurance premiums paid to foreign export insurers. 517 U.S. 843 (1996) (opinion postdates Morandini's conduct). *Thames & Mersey Marine Insurance Co. v. United States* involved a War Revenue Act stamp tax on export insurance policies, 237 U.S. 19 (1915), and *Cyprus Amax Coal Co. v. United States* involved excise taxes on coal. 205 F.3d 1369 (Fed. Cir. 2000) (opinion postdates Morandini's conduct). In sum, the cases cited by Ammex are inapposite to the issue of whether fuel can be sold duty-free.

No. 09-1786
*Ammex, Inc. v. Durant, et al.*

Further, the litigation history of this dispute shows that the courts have grappled with the duty-free issue. *Compare Ammex III*, 334 F.3d at 1058 ("[T]he position of the IRS on the tax issue provided a reasonable basis for Custom's action. In short, an agency may change its policy position based on a reasonable explanation, and the IRS ruling provided such a basis."), *and Ammex IV*, 341 F. Supp. 2d at 1310 ("[O]n October 23, 2000, Ammex solicited another letter from Customs to certify that fuel sold in Ammex's duty-free store was exempt from future taxes, which request Customs *understandably* forwarded to the [IRS].") (emphasis added), *with Ammex IV*, 341 F. Supp. 2d at 1314 ("The court cannot uphold a Revocation Ruling based on a nonbinding, informational, general letter from the IRS bearing no specifics pertaining to Ammex's situation. To do so would be to ratify a clear error of judgment."). Customs' revocation decision was reversed by *Ammex IV* and *V* based on those courts' analysis of the distinction between the concepts of tax "imposition" and tax "assessment" under the Internal Revenue Code, which is not a elementary issue.[2] While Durant's understanding of these concepts ultimately turned out to be in error, mere error alone on the facts of this case does not mean that Durant could not "have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Pray*, 49 F.3d at 1158.

---

[2] In fact, the meaning of the term "assessment" has generated lengthy explanation (and debate) by the Supreme Court as recently as 2004. *See Hibbs v. Winn*, 542 U.S. 88, 100-02 (majority opinion), 114-17 (four Justices in dissent).

Also, our prior panel concluded that Ammex is not an "exporter," and there was disagreement among those judges as to whether Ammex even had standing in that tax appeal. *See Ammex, Inc. v. United States*, 367 F.3d 530, 536-37 (6th Cir. 2004). The prior cases illustrate that the rights and issues involved in this long-standing dispute have been less than unmistakably clear.

As noted by the district court, Durant and Morandini deliberated, obtained advice, and sought comment. Not all goods can be sold duty-free under the law. *See, e.g.*, 19 U.S.C. §§ 1555(b)(8)(E), 1557(a)(1); 19 C.F.R. § 19.35(a). The appellees' conduct simply was not objectively unreasonable under the circumstances. *See, e.g., Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009). We conclude, as did the district court, that Ammex's rights were not clearly established at the time of the alleged violations. "This is not the type of case where any reasonable official would know he or she was violating a clearly established right." *Ammex, Inc. v. Durant*, No. 08-CV-13120, 2009 WL 1124470, at *6 (E.D. Mich. Apr. 23, 2009).

## IV.

Ammex's *Bivens* action is also barred by 19 U.S.C. § 1513 which provides in material part, "No customs officer shall be liable *in any way to any person* for or on account of . . . any other matter or thing as to which any person might under this chapter [Chapter 4 of Title 19 of the United States Code] be entitled to protest or appeal from the decision of such officer." 19 U.S.C. § 1513(3) (emphasis added). Ammex asserts rights under sections 1555

and 1557 of Chapter 4, and Ammex appealed Customs' adverse rulings to the Court of

International Trade and the Court of Appeals for the Federal Circuit as authorized by 29

U.S.C. § 1581(i). The facts of the present case thus fall squarely within the protection

offered by section 1513.

The Supreme Court has held that the similarly-worded predecessor version of section

1513 barred suit against a collector for the allegedly unlawful assessment of duties. *See*

*Schoenfeld v. Hendricks*, 152 U.S. 691 (1894). Likewise, the Supreme Court quite recently

noted that the breadth of the word "any" in an immunity provision of the Federal Tort Claims

Act supported the conclusion that *Bivens* actions were barred, even though the statute

predated *Bivens*. *See Hui v. Castaneda*, No. 08-1529, 2010 WL 1740524, at *5 (U.S. May

3, 2010).[3] We therefore conclude that 19 U.S.C. § 1513 provides an alternate basis for

dismissal. *See Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994) (noting our power to

affirm on alternate grounds not reached by the lower court). Section 1513(3) plainly protects

Morandini and Durant from liability "in any way to any person" under the circumstances

presented herein.

---

[3] Purportedly contrary authority relied upon by Ammex is not at all on-point. *Rankin Gilmour & Co. v. Newton* only addressed common law rights and did not discuss § 1513 or its predecessor. *See* 270 F. 332, 333-34 (S.D.N.Y. 1920).

No. 09-1786
*Ammex, Inc. v. Durant, et al.*

**V.**

For the reasoning articulated in this opinion, we **AFFIRM** the dismissal of Ammex's

complaint.