## A. KLIPSTEIN & CO. v. DILSIZIAN et al.

(Circuit Court of Appeals, Second Circuit. May 11, 1921.)

No. 209.

1. Sales ⬤→176(1)—Delay in delivery held waived.

A contract for the sale of a quantity of gum arabic stated no time for delivery, but provided that it was to be shipped from Red Sea to New York on a vessel named, "which is now on her way to Red Sea." Delivery was to be in New York, by the law of which state title does not pass till delivery is made. On arrival of the vessel in New York and tender of the property, the buyer refused to receive it. *Held* that, under the contract and the circumstances, the vessel being a slow sailing ship, there was no unreasonable delay in delivery, and that the buyer, who had previously made no complaint of delay, could not repudiate the contract on that ground after the vessel had arrived.

2. Sales ⬤→77(2)—Duties of seller under "c. i. f." contract.

The expression "c. i. f." in a contract, indicates that the price fixed covers the cost of the goods, insurance, and freight on them to the place of destination, and under such a contract the seller must ship the goods,

---

arrange the contract of affreightment to the place of destination, and pay its cost, and allow it from the purchase price, and procure insurance for the buyer's benefit for the safe arrival of the goods, and pay therefor.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Garbiss Dilsizian and others, partners as Dilsizian Bros., against A. Klipstein & Co. Judgment for plaintiffs, and defendants bring error. Affirmed.

John J. Schwartz, of New York City (I. Maurice Wormser and David Burr Luckey, both of New York City, of counsel), for plaintiffs in error.

Harrington, Bigham & Englar, of New York City (Lawrence A. Sullivan, of New York City, of counsel), for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The plaintiffs below brought this action against the defendant below to recover damages for breach of contract, because the defendant below refused to accept a tender made on May 20, 1919, of 50 tons of gum arabic. This purchase was made pursuant to the terms of a contract between the parties dated April 23, 1918. The contract provided for the sale of 50 long tons of gum arabic, 1918 crop, freight average at 25 cents per pound net, c. i. f. New York. Payment was to be made by letter of credit at a bank in New York on which the seller was at liberty to draw a sight draft with invoice, bill of lading, and insurance certificates attached. Under the clause "Shipment" it provided, "From Red Sea to New York on vessel Phyllis, which is now on her way to Red Sea," and under the term "Remarks," "Sellers not responsible if shipment of merchandise or sailing of vessel prevented by any government regulations in country of export or destination, by act of God, perils of the sea, or by any other circumstances beyond the seller's control."

The complaint sets forth the terms of the contract, a copy of which is annexed and made a part of the pleading. It pleads the arrival of the Phyllis with the merchandise in question, as contracted for, and its tender to the defendant below, and its refusal to accept or pay for the goods, either by letter of credit, as provided for, or otherwise. It alleged a repudiation of the contract, canceling and withdrawing its letter of credit prior to the arrival of the Phyllis, and the tender of the goods, and that on the 20th of June, 1919, the defendant below, being then for a reasonable length of time in default of payment, the plaintiffs below elected to and did rescind, and notified the defendant below that they would hold it liable for the difference on the sale between the contract and market price of the goods, which was then 13½ cents per pound; that the storage charge of $85 was incurred; that the plaintiffs below have duly performed all their contractual obligations; and damages were demanded in the sum of $12,965.

The answer denied the allegations of breach of contract. It asked for a reformation of the contract. It alleged that an express condition of the contract was that the gum arabic should arrive in New York

in November, 1918, and that no letter of credit should be furnished until the buyer was notified that the import license had been obtained by the seller; that shipment was not confined to the Phyllis, then on her way to the Red Sea, but was permissible by other vessel; but it was required, however, to arrive in New York, to be there delivered to the defendant below at the latest in November, 1918. A counterclaim was pleaded.

On the trial, the counterclaim and the several defenses were abandoned, except the defense was insisted upon that an unreasonable length of time had expired before delivery, and it was urged that the contract had been breached by the plaintiffs below by failure to present the documents "within the time duly provided for in said agreement." Also it was contended that, by custom and usage in the purchase and sale of goods shipped by c. i. f. contract, the seller was required to promptly notify the buyer of the delivery to the carrier of the quantity shipped, date of bill of lading, and other information of shipment, and that the failure so to do, together with the failure to send on the documents in advance of the delivery in New York of the merchandise, constituted a breach of the contract. We think the complaint sufficiently alleges a cause of action for the buyer's failure to take delivery; its failure having been followed by a rescission of the contract.

It is contended on behalf of the defendant below, that this was a c. i. f. contract, and required the seller to make delivery of the gum arabic by promptly presenting and delivering the bill of lading, invoice of gum put on board, and insurance certificate, and provided for payment only by the seller's promptly presenting and delivering to the bank a sight draft for the amount of gum put on board at the contract price shown by the bill of lading, seller's invoice and insurance certificate attached.

[2] The c. i. f. contract is an expression which indicates that the price fixed covers the cost of the goods and insurance and freight on them to the place of destination. Under such a contract, the seller must ship the goods, arrange the contract of affreightment to the place of destination, pay its cost and allow it from the purchase price, and procure insurance for the buyer's benefit for the safe arrival of the goods and pay therefor. When the seller has done this, and forwarded the papers to the buyer, he has fulfilled his contract, and delivery is complete. There is no obligation by the seller to deliver the goods at the place of destination. But the liability of the parties here must be controlled by the terms of the contract into which they entered. It is a New York contract. Under the heading of "Weights" is the following: "New York official landed weights"—and it is further provided under "Remarks," "The price is fixed at 25 cents per pound net c. i. f. New York."

The entire contract contemplates a delivery of the gum arabic on the vessel Phyllis in a port of the United States. Delivery and payment therefor were to be simultaneous acts, and until delivery title remained in the seller. Where goods are delivered on board vessel, to be car-

ried, and a bill of lading is taken, a delivery by the seller is not a delivery to the buyer. The ship is a bailee for the delivery to the person indicated in the bill of lading as the one for whom they are to be carried, and this applies even in cases where bills of lading show that the goods are free of freight because they are the owner's property. Sheppard v. Harrison, L. R. 5 H. L. 116. The contract provides for shipment on a particular vessel from the Red Sea to New York, which was specifically identified as to name and location when the contract was made. The time of delivery cannot be read into the contract simply because, under the heading of "price," it is fixed at "net c. i. f. New York at 25 cents per pound." The only presentation provided for, for payment, was at a bank of New York where the buyer had a letter of credit. If the buyer had need for the documents as now contended, it was in its power to tender payment and demand delivery thereof at a time which would be reasonable under all the circumstances. It is apparent that the conditions of delivery and payment were concurrent. The goods in question were consigned to Dilsizian Bros. and were not consigned to the defendants below. Under section 100 of the Personal Property Law of the state of New York (Consol. Laws, c. 41), by rule 5, it is provided:

"If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

And section 101, subd. 2, of the same act, provides:

"Where goods are shipped, and by the bill of lading the goods are deliverable to the seller or his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods."

And section 103 provides:

"Unless otherwise agreed, the goods remain at the seller's risk until the property therein is transferred to the buyer. * * *"

By this statute, title passed only on delivery. It is quite evident that by that contract the parties did not intend title to pass until the goods were delivered at New York on the ship Phyllis. No definite date of delivery is stated in the contract. It does provide for delivery on the Phyllis, "which is now on her way to the Red Sea." By this provision the parties must be said to have intended the delivery to be made on the Phyllis within a reasonable time. What a reasonable time is must be determined by all the circumstances. The Phyllis was a sailing vessel. It is not mentioned when she left the Red Sea, nor is her port of departure or destination. The evidence discloses that no word had been asked for as to her time of arrival when, in August, a letter of credit was issued. The vessel began loading in September, 1918. She took on board 10,000 bags of gum arabic. She was obliged to obtain her clearance papers at Aden, 400 miles distant from her loading port. She then proceeded to Aden and took on a cargo of goatskins. At Aden her master mailed the bill of lading, which reached New York on December 31, 1918. It also appears that, as the Phyllis

arrived at Massowah, her loading port, on September 6, 1918, one of the members of the firm of the defendant below left that port for New York, arriving November 11, 1918. It was thus shown that it required two months' travel from Massowah to New York by fast steamer.

The Phyllis got her cargo from vessels which arrived from the Sudan, and which were transshipped on her, after which she was towed 400 miles to Aden, where she arrived in November, 1918. As the bill of lading was given October 30, 1918, it is evident that the intervening time was required for the transshipment. A mail-carrying vessel could not have reached the port of New York until December 31st. The Phyllis started her homeward voyage, and landed in New York on May 20, 1919. It lasted about five months, and was longer than her outward voyage; but she had 400 miles more to sail. She was a slow boat. Her speed, or the time, apparently, was not in the minds of the parties when the contract was entered into. Upon her arrival, however, with the gum arabic on board ready for delivery, notice was given to the defendant below, together with the invoice and offer of inspection and public weighing as provided for in the contract. There was no complaint from the defendant below from September, when notice that the Phyllis had reached the Red Sea was given on September 6, 1918 and was loading at Massowah, until her arrival in New York on May 20, 1919.

[1] We think that under these circumstances there was not an unreasonable delay in making delivery of the gum arabic as required by the terms of the contract. If there was delay, the defendant below, while the delay continued, remained silent indicating its desire to keep the contract alive, and when the goods arrived in May, 1920, they could not then suddenly, with justification, refuse to be bound by the contract. Brede v. Rosedale Terrace Co., 216 N. Y. 246, 110 N. E. 430. The contract was in the course of performance. The ship was making her course to New York, and in the absence of express terms as to time of delivery she had a reasonable time under all the circumstances, to make the voyage. Eppens v. Lomax Littlejohn et al., 164 N. Y. 187, 58 N. E. 19, 52 L. R. A. 811. An attempt to rescind the contract or refuse to be bound thereby, without warning or demand for the goods from the day of loading until their arrival in New York, indicated a desire to find a convenient excuse for avoiding the consequences of the contract. A drop in the market price of gum arabic in the meantime may have been the reason therefor.

In any event, the defendant below cannot escape, when it did not express its dissatisfaction at the delay before abandoning the contract, particularly when there is no evidence to indicate that the plaintiffs below could have hastened the voyage and made delivery in the ordinary course at an earlier date. The right of the defendant below to repudiate could arise only upon the theory that the obligation of plaintiffs below to deliver as an implied condition, within a reasonable time, had not been met. When the time is fixed, failure to make delivery justifies a refusal to be bound by the contract. Norrington v. Wright,

115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Cleveland Rolling Mill v. Rhodes, 121 U. S. 255, 7 Sup. Ct. 882, 30 L. Ed. 920. Punctuality as to delivery was disregarded by the parties, and the defendant below cannot now make it a condition precedent to its own performance that the delivery should have been made in November of the preceding year, in the absence of some language in the contract to this effect, or some word from it during the period of delay insisting upon such delivery or some sufficient reason stated.

Judgment affirmed.