### ARCTIC ICE & COAL CO. et al. v. SOUTHGATE.

(Circuit Court of Appeals, Fourth Circuit. February 9, 1923.)

#### No. 2039.

1. **Banks and banking** ⬥191—**Release by change of contract without consent of guarantor.**

   Where defendant bank provided letter of credit for purchaser of sugar, under contract providing for shipment from India or Java during August-September, seller's option, payment on presentation of dock receipt or bill of lading, delivery to be made on presentation of shipping documents, and defendant bank specified that the amount of its letter of credit should be available on delivery to it of the shipping documents, *held*, that defendant was not liable where, without its consent, the contract of purchase was changed, by specifying date of shipment as July, 1920, and requiring payment on presentation of delivery order; no shipping documents ever having been presented.

2. **Sales** ⬥153—**Buyer's refusal of delivery in compliance with contract rendered him liable in damages.**

   Where a contract for the purchase of sugar, providing shipment from India or Java during August-September, seller's option, payment to be made on presentation of dock receipt or bill of lading, was changed by mutual agreement for shipment during July and payment on presentation of delivery order, and the seller tendered delivery order drawn on an importer from whom it had bought the sugar, the buyer could not refuse

delivery because a dock receipt or bill of lading or delivery order accepted by the importer should have been tendered.

Waddill, Circuit Judge, dissenting in part.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Action at law, by T. S. Southgate, trading as T. S. Southgate & Co., against the Arctic Ice & Coal Company and the Atlantic Bank & Trust Company. Judgment for plaintiff, and defendants bring error. Affirmed as to the first-named defendant, and reversed as to the other.

N. L. Eure and J. S. Duncan, both of Greensboro, N. C., for plaintiffs in error.

R. C. Strudwick, of Greensboro, N. C. (Hugh W. Davis, of Norfolk, Va., and Wm. P. Bynum and S. S. Alderman, both of Greensboro, N. C., on the brief), for defendant in error.

Before WOODS and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. The main error assigned is in the direction of a verdict in favor of the plaintiff against both the defendants. Plaintiffs, Southgate & Co., made a contract dated May 31, 1920, to sell Arctic Ice & Coal Company 200 sacks of sugar. The contract contained these provisions:

"200 sacks (about 224 pounds each) Java white sugar at 24 cents per pound, cost, insurance, and freight, ex dock New York, duty paid, net shipping weights.

"Shipment—From India or Java during August-September, 1920, seller's option."

"Payment—Buyer to open immediately confirmed irrevocable credit in favor of sellers, through the Trust Company of Norfolk, for full amount of invoice. Payable net cash in Norfolk in United States currency on presentation of dock receipt or bill of lading.

"Delivery—Sellers' obligation as to delivery complete upon presentation of shipping documents."

The part of the contract involved here is that providing for the purchase price not to be due and payable until presentation of "dock receipt or bill of lading." Evidently the "shipping documents" mentioned in the delivery clause referred to the "dock receipt or bill of lading" in the payment clause.

The plaintiff prepared the contract of sale and sent it to Arctic Ice & Coal Company by mail to be executed. With the contract it sent the form of a letter of credit, to be filled out and signed as required by the contract. The letter was filled out and signed on June 2, 1920, by defendant Atlantic Bank & Trust Company and sent to Trust Company of Norfolk. The letter was in these words:

"On behalf of the Arctic Ice & Coal Company, of Greensboro, N. C., we desire to open a credit through your trust company, in favor of Messrs. T. S. Southgate & Co., Norfolk, Va., in the amount of $10,752, payment to be made in par funds against shipping documents on presentation covering 200 sacks of Java white sugar (about 224 pounds each) shipment August or September from India or Java, via New York.

287 F.—4

"This credit is to be made under our guaranty and to expire September 15, 1920. If agreeable, please notify Messrs. T. S. Southgate & Co. of this credit."

. Atlantic Bank & Trust Company wrote a separate letter of the same date, reiterating that its obligation was that of guarantor, and saying:

"Our understanding of this guaranty being that this amount becomes available to T. S. Southgate & Co. upon their delivery to you of shipping documents described therein, and that we in turn cover these advances to you upon your delivery to us of these shipping documents."

The letter of credit was based on the contract of sale, and there can be no doubt that the shipping documents referred to therein were the same shipping documents mentioned in the contract of sale, and defined therein as "dock receipt or bill of lading."

[1] This was the only contract ever made by the Atlantic Bank & Trust Company, and the evidence of its vice president and cashier that it was not a party to any change of the contract, and that it had no notice of any change, is undisputed. Evidently, therefore, the plaintiff had no cause of action against Atlantic Bank & Trust Company until it presented the dock receipt or bill of lading, the shipping documents called for by the contract of sale. These documents were of great value as security to the bank, and it had a right to demand them as condition of payment. Since neither a dock receipt nor bill of lading for the sugar was ever presented, it follows that the Atlantic Bank & Trust Company was not liable, and the District Judge erred in directing a verdict against it.

The defendant Arctic Ice & Coal Company was clearly liable to the plaintiff under a later contract, of which the Atlantic Bank & Trust Company had no notice. On June 22, 1920, the plaintiff and Arctic Ice & Coal Company entered into a new contract for the purchase of sugar in substitution of the contract of May 31, 1920, which differed from the first in these important particulars: Date of shipment from India or Java was changed from "during August-September, 1920, sellers' option" to "July, 1920, sellers' option," and the provision for payment "on presentation of dock receipt or bill of lading" was changed to "on presentation of delivery order."

[2] On September 13, 1920, Southgate & Co. made a sight draft on Arctic Ice & Coal Company for $10,752 and attached thereto an order on Leon Israel & Company, New York importers, to deliver to Arctic Ice & Coal Company 200 bags of Java sugar. Before drawing the draft Southgate & Co. had paid for the sugar and arranged with the importers to deliver it on presentation of the order, in accordance with the contract of June 22. Arctic Ice & Coal Company refused to pay the draft on the ground that a dock receipt or bill of lading, or a delivery order accepted by the importers, should have been attached to the draft. We think the delivery order tendered was in strict compliance with the contract of plaintiff of June 22, 1920. The change was deliberately made from the requirement of presentation of a dock receipt or bill of lading in the first contract to a delivery order and the second contract contains no provision that the delivery order should be accepted by the person to whom it was directed. The proof was

undisputed that the order tendered by the plaintiffs on the importers was a delivery order as understood in the trade. If there had been no testimony on the subject, it is obvious that a delivery order in the ordinary meaning of the words is an order by one person to another to deliver to a third person named in the order the property mentioned in it. The plaintiff complied with its contract, and was entitled to payment when it presented its sight draft, accompanied by an order for the delivery of the sugar sold to the Arctic Ice & Coal Company by a person who had it ready for delivery on presentation of the order.

We find no error in the charge as to the measure of damages. The contract price of the sugar was 24 cents. The evidence was undisputed that at the time of the breach of the contract the market was declining, that it was difficult to sell sugar, that the plaintiff endeavored to sell at the best price obtainable, and that the price of 10.78 cents, for which it was sold through the regular channels, was a fair market price.

Objections to the admission of evidence set out in the exceptions seem to us without substance and require no discussion.

The judgment is affirmed as to Arctic Ice & Coal Company, and reversed as to Atlantic Bank & Trust Company.

WADDILL, Circuit Judge (dissenting). I concur fully with the majority of the court that the judgment against the Arctic Ice & Coal Company should be affirmed, and dissent in so far as the decision reverses the judgment of the District Court, and relieves from liability the Atlantic Bank & Trust Company, guarantor of the Arctic Ice & Coal Company. It is true the first contract given for the purchase of sugar, referring to payments, used the language "on presentation of dock receipt or bill of lading," and the new or extended contract of purchase used the language "on presentation of delivery order." This change from "dock receipt or bill of lading" to "delivery order" was in the contract of sale between the vendor and vendee, and the letter of credit given by the Atlantic Bank & Trust Company to guarantee the Arctic Ice & Coal Company's indebtedness was prior to the execution of the extended or new contract of sale.

Although the letter of credit by the Atlantic Bank & Trust Company was given during the life of the first contract, the same was apparently allowed to remain in full force and effect as security to the vendor during the running of the extended contract, dated June 22d, until the 15th of September, 1920, and in the clause referring to payments thereunder, the precise term used was neither that of the first or second contracts, but, on the contrary, the letter of credit provides:

"Payment to be made in par funds against shipping documents on presentation covering 200 sacks of Java white sugar (about 224 pounds each), shipment August or September from India or Java via New York."

The letter of credit provided further that the credit was to be under their guaranty, and to expire the 15th of September, 1920. That there may have been some uncertainty in the minds of the parties as to what was the correct terminology regarding the shipping papers in

question is not unnatural; but the testimony seems to make clear just what was intended in making the contract, and that, in shipments of parts of a cargo, as here, the correct term was that used in the new or extended contract of sale, viz. "delivery order," as distinguished from "dock receipt or bills of lading"; a bill of lading being used in cases of whole cargoes, and delivery orders in cases of part shipments of freight. The letter of credit wisely avoided this embarrassment, and provided for payment being made upon presentation of "shipping documents."

The cargo of sugar reached New York on the 13th of September. The importers were paid therefor by the vendors, T. S. Southgate & Co., who arranged for delivery of the sugar to the vendee, and on that day drew their sight draft on the Arctic Ice & Coal Company for the amount due for the sugar, with a delivery order thereto attached. The Arctic Ice & Coal Company refused to pay the draft, on the ground that a dock receipt or bill of lading, and a delivery order accepted by the importer, should have been furnished. This the majority opinion holds the Arctic Ice & Coal Company could not ask, and that it was liable for the payment of the draft; it having been drawn in accordance with the latter contract, which substituted "delivery order" for "dock receipt or bill of lading."

I do not entirely concur in this view. The words "shipping documents," as used by the guarantor, were broad enough to cover either delivery orders or dock receipts and bills of lading, and in the sense used meant to have the Atlantic Bank & Trust Company become liable for a debt lawfully incurred by the vendee; and since the court holds the latter (who may be entirely irresponsible) clearly liable in the premises, it follows that those standing for it and guaranteeing it, are and should be held liable, and not escape responsibility upon their guaranty given, and in good faith accepted and acted upon, by any such quibble as they interpose.

The sugar, the purchase price of which is involved, was regularly and in due course of business purchased and paid for, and was in New York three days before the expiration of the letter of credit, awaiting the call of the buyer, who simply would not call for it, though it was lawfully tendered, and its delivery could have been arranged for by the use of the phone or wire, and the sugar actually delivered in Greensboro during the life of the letter of credit, had it been desired. Moreover, every assurance against possible loss was fully and carefully guaranteed alike to the Arctic Ice & Coal Company and the Atlantic Bank & Trust Company, its guarantor. Not only did the vendor, Thomas S. Southgate (trading as T. S. Southgate & Co., one of the largest business concerns in the South, whose probity and financial standing is first-class in the financial and business world), give every guarantee against possible loss, but in addition offered and tendered the guaranty of the Trust Company of Norfolk, Va., one of the leading financial institutions of the country, as further assurance against harm or loss arising from any imaginary difficulty in connection with the shipping documents mentioned in the letter of credit, either to the vendee or its guarantor.

From my viewpoint, the action of the lower court should be affirmed as a whole, and particularly that the defendant Atlantic Bank & Trust Company, the guarantor of the payment of the debt incurred, should not be allowed to escape responsibility upon any such excuse as interposed. To do so will greatly tend to lessen the faith in and weaken the stability of commercial transactions of the character here.