## HYMAN–MICHAELS CO. v. FOX et al.

(Circuit Court of Appeals, Second Circuit. April 7, 1924.)

### No. 167.

1. **Appeal and error �köp931(1)—Facts conclusively presumed to have been resolved in favor of judgment.**

Trial having been by court, and general finding having been made for defendants, all questions of fact are conclusively presumed to have been resolved in favor of defendants below.

2. **Sales �köp150(3)—Delivery must be made within reasonable time.**

Seller of steel rails breached its contract, where delivery was not made or tendered within reasonable time, and delay in a shipment from on or about August 5th to November 16th was more than reasonable time.

3. **Shipping �köp106—Bill of lading both receipt and contract.**

The bill of lading is both a receipt and a contract.

4. **Sales ⊁köp153—Tender of false bill of lading no tender.**

Tender of a bill of lading "received for transport" was no tender to purchaser, where bill of lading was false, in that shipment was not within custody and control of signer of bill of lading.

5. **Sales ⊁köp161—Goods not delivered until on board ocean carrier and documents delivered.**

A contract, labeled not only "c. i. f.," but also "f. o. b.," and containing in separate heading an agreement as to "time of delivery," *held* to require sellers to put goods on board ocean carrier and deliver documents called for and responding to letters "c. i. f.," in order to constitute delivery at time stated.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Hyman-Michaels Company against Hugh Corby Fox and Francis H. Fox, copartners doing business under the name

---

⊁köp For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes ⟩

of Fox Bros. & Co. From a judgment dismissing the complaint on the merits, after trial by the court, a jury having been waived, plaintiff brings error. Affirmed.

Rabenold & Scribner, of New York City (Mark Hyman, Ralph M. Ketcham, and Matthew M. Levy, all of New York City, of counsel), for plaintiff in error.

Nathaniel S. Corwin, of New York City, for defendant in error.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge. [1] The trial having been by the court, and a general finding having been made, all questions of fact are conclusively presumed to have been resolved in favor of defendants below. This inexorable rule is of small importance here, because we cannot perceive that there is any dispute as to what happened, and why it occurred; but some parts of the argument made appear to us to neglect this point of practice law, hence the mention of it.

Plaintiff had, as pleaded, three several contracts with defendant for the sale of steel rails, and this action is to recover the sale price thereof, on the theory that the rails had been "delivered," but refused by defendant. Of the three pleaded contracts, two are evidenced by written documents of a formal nature; the third was but an increase in the quantity of rails covered by the second writing. The case therefore rests on two "sales contracts," signed by both parties, which, after recitation of parties' names and a formal agreement by one to "sell and deliver" and by the other to "buy and accept," states quantity, material, and price, and then continues thus:

The first contract, dated July 13, 1920, reads:

"F. o. b.—c. i. f. Antilla, Cuba. Terms cash in New York against delivery due you [i. e., Fox] of commercial invoices, bills of lading showing freight prepaid, insurance certificates, inspection certificates, and consular invoices.

"Time of Delivery.—Prompt shipment is to be made on this material.

"Remarks.—Rails to be shipped on Aluminum Line steamer leaving Newport News about Aug. 5th."

The second contract, dated September 2, 1920, is substantially identical, except that "Time of Delivery.—During October," is substituted, and the heading "Remarks" gives no further information regarding either time or method of shipment.

[2] The rails contracted for on July 13th were not shipped in any sense of that word on or about August 5th, and the usual complaints and protests by letter ensued. Plaintiff never even tendered documents under the c. i. f. clause until November 16th. As to this cause of action we cannot, and are not inclined to, do more than refer to the finding below, to the effect that, since defendants had legal right to insist upon a "reasonable time" for delivery, had done so, and received no delivery or tender thereof within such reasonable time, the breach of contract lay at plaintiff's door, and no recovery could be had. To this we fully agree, although so much of it as is a finding of fact would bind us, whether we agreed or not.

As to the contract of September 2d we shall assume with plaintiff that the seller was under no obligation to deliver at Antilla, and that

he was to send the goods by rail to Newport News, and there deliver them to an ocean carrier. Facts are that the Chesapeake & Ohio Railroad did carry them to tide water, but all the rails were not only not on board any vessel, but not even alongside a vessel or in close proximity to the carrying vessel's berth "during October." Plaintiff, however, deeming it necessary to get an ocean bill of lading during that month, procured the issuance by an ocean carrier, on October 29th, of bills of lading for the rails, containing an acknowledgment of receipt of the goods "to be transported by the good barge Fort Pierce" from Newport News to Antilla. At the date of this bill not all the goods were in the physical custody of the issuing ocean carrier, and they were not laden on the barge "during October." Nor is there any evidence that before November 16th were the other documents (invoices and certificates) in existence. On the date last given the documents referred to in the sales contract (or most of them) were tendered to defendants and refused.

On these facts, plaintiff in error offers an elaborate and interesting argument, on the following as the only point in the case: Does a "received to be transported" bill of lading constitute a good delivery under a c. i. f. contract made in New York, and there to be performed by presentation of the enumerated documents? Whether this point can be thus baldly stated as a query of law is very doubtful. Men do not make contracts, as bricks are made, in a mold, so that they are all alike. Contracts called by their makers c. i. f. agreements may vary in detail, and it is the endeavor of the law, not to compel all men to draft their agreements alike, but to enforce agreements as drafted as far as possible. Of this our recent decision regarding a c. i. f. agreement is a good example, viz. Harper v. Hochstim (C. C. A.) 278 Fed. 102, 20 A. L. R. 1232. We therefore decline to enter upon the investigation suggested by appellant's question, because, for two reasons, the facts forbid:

[3, 4] No matter what kind of a contract is made, it must be performed as made. This contract called for the delivery of certain documents, among others a bill of lading. As has been often pointed out, a bill of lading is both a receipt and a contract. In this case it is important only in its receipt aspect. The trouble with the bill of lading here tendered is that it was false, and, we regret to think, designedly so. The falsity consisted in an acknowledgment of receipt when the goods had not been received. This is a matter different from and deeper than the point urged in argument. Even if it is true that a "received for transport" bill is the equivalent for the purposes of this case to a "received on board" bill, the word "received" must mean in possession or within the custody and control of the person or corporation signing the bill of lading. The goods receipted for were not so in custody and control; therefore the bill of lading was false, and the tender of a false bill of lading is no tender.

[5] The second fact avoiding the suggested inquiry is that the parties to this contract labeled it, not only "c. i. f.," but "f. o. b." This is a perfect example of technical term being used without explanation; but "f. o. b." must have some meaning, and when we observe that these

initials are found in both the contracts in suit, and that each of them contains in a separate heading an agreement as to "time of delivery," we think the inference irresistible (in the absence of any evidence of custom on the point) that the meaning of the second contract now under consideration is that the sellers were to put the goods on board of the ocean carrier and deliver the documents called for and responding to the letters c. i. f. "during October."

Whether the papers to be delivered could have been tendered a reasonable time after October it is not necessary to decide, because under this agreement it is to us plain that the goods had to be on board during October; and this results, not from any hard and fast rule about bills of lading, but from the agreement imported by the language of the parties in their contract.

Judgment affirmed, with costs.