FRANCIS A. CUNDILL, Respondent, *v.* A. W. MILLHAUSER CORPORATION, Appellant.

(Argued October 1, 1931; decided November 17, 1931.)

*Stephen Callaghan* and *Harry Edwards* for appellant. There is no evidence to show that a delivery of the shipment was contemplated by the parties or made by the plaintiff at Hamburg, Germany, on January 21, 1926, or at any other time or place. (*Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273; *Willets & Patterson* v. *Abekobei & Co.*, 197 App. Div. 528; *Richards Co.* v. *Wreschner*, 174 App. Div. 484; *Stein Co.* v. *Robertson*, 171 N. Y. 101; *Wessel* v. *Seminole Phosphate Co.*, 13 Fed. Rep. [2d] 999; *Rushing* v. *Manhattan Co.*, 224 Fed. Rep. 74; *Schlopflocher* v. *Essgee Co.*, 197 App. Div. 781; *Carocopos, Inc.*, v. *Chieves & Co.*, 203 App. Div. 104; *Harper* v. *Hochstim*, 278 Fed. Rep. 102; *Klipstein* v. *Dilsizian*, 273 Fed. Rep. 473; *Diamond Alkali Export Co.* v. *Fl. Bourgeois*, [1921] 3 K. B. 443.) The plaintiff failed to establish a cause of action to recover the contract price.

(*Glass & Co.* v. *Misroch*, 239 N. Y. 475; *Reichbart* v. *Smith Eisman Corp.*, 199 App. Div. 571.)

*James Madison Blackwell, Arleigh Pelham* and *Arthur G. Syran* for respondent. The contract is the usual c. i. f. contract. (*Thames Mersey Marine Ins. Co.* v. *United States*, 237 U. S. 19; *Matter of Bullard*, 210 App. Div. 476; 240 N. Y. 388; *Smith Co.* v. *Moschalades*, 193 App. Div. 126; *Seaver* v. *Lindsay Light Co.*, 223 N. Y. 273; *Hernandez* v. *Brookdale Mills*, 201 App. Div. 325; *Mee* v. *McNider*, 109 N. Y. 500; *Dwane* v. *Weil*, 199 App. Div. 719; 235 N. Y. 527; *American Sugar Ref. Co.* v. *Page & Shaw*, 16 Fed. Rep. [2d] 662; *Pennick & Co.* v. *Helvetia Com. Co.*, 212 App. Div. 519; *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413; *Smith Co.* v. *Marano*, 267 Penn. St. 107; *Ruttonjee* v. *Frame*, 205 App. Div. 354; *Warner, Barnes & Co.* v. *Warner Sugar Ref. Co.*, 117 Misc. Rep. 247.) Upon presentation of the proper documents, the plaintiff became entitled to the purchase price of the goods in question. (*Smith Co.* v. *Moschalades*, 193 App. Div. 126; *Ruttonjee* v. *Frame*, 205 App. Div. 354; 237 N. Y. 115.)

HUBBS, J. This is an action to recover the purchase price of twenty-five tons of antimony. The action is under subdivision 1 of section 144 of the Personal Property Law (Cons. Laws, ch. 41), which reads: " Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods."

The theory of the respondent is that the title of the property passed when the antimony was placed on board ship at Hamburg. Appellant contends that title to the antimony never passed and that the action was improperly brought under subdivision 1 of section 144 of the Personal Property Law and that the only cause of action

which respondent has is one to recover damages for refusal to accept the antimony.

The determination of the question depends upon whether the contract of sale is a c. i. f. contract. It reads in part as follows:

" NEW YORK, *December* 31, 1925

" To Messrs. A. W. MILLHAUSER CORP.,

" 25 Broadway, New York City

" DEAR SIR (s): Herewith we confirm sale to you for the account of Ourselves.

" Thru C. S. Trench & Co.

| Quantity | Article | Price |
|---|---|---|
| " 25 tons (each 2,240 lbs. net) | Chinese Antimony Regulus 99% | 21¾¢ per lb. c.i.f. New York. |

" Shipment — Promptly from Hamburg.

" Duty — For account of buyers.

" Insurance — For account of sellers.

" Payment — Net cash against shipping documents payable upon arrival of steamer.

" Terms: This contract is contingent upon strikes, floods, fire, riots, war, rebellion, Force Majeure and all other causes beyond our control, but it is our option to make shipment or deliveries as soon as possible after such contingencies have been removed. Contract is based on the present tariff, any change in duty to be for buyer's account.

" No arrival, no sale, but proof of shipment to be given by sellers, each shipment to constitute a separate delivery. Variation of 10 days in time of shipment or delivery not to constitute ground for rejection."

Following the above quoted provisions were other provisions not now material. The contract was signed by the seller and accepted in writing by the buyer. If the contract was a c. i. f. contract, the action was properly

brought. If not, the judgment in favor of the plaintiff must be reversed. (*Glass & Co.* v. *Misroch*, 239 N. Y. 475.)

This court, in *Seaver* v. *Lindsay Light Co.* (233 N. Y. 273, 276) has defined a c. i. f. contract as follows: "The meaning of the letters c. i. f. in an executory contract is * * * well understood in the commercial world. They mean the cost of the merchandise, insurance thereon, and freight charges to point of destination. * * * Unless there is something in a c. i. f. contract to indicate to the contrary, the seller completes his contract when he delivers the merchandise called for to the shipper, pays the freight thereon to point of destination, and forwards to the buyer bill of lading, invoice, insurance policy and receipt showing payment of freight."

At the time this contract was entered into, the goods were in transit between China and Hamburg. The shipment arrived in Hamburg on the 17th day of January, 1926, and was transshipped by lighter to Bremen where it was placed on the steamer *Hannover* which sailed for New York on January 24th, 1926, and arrived in New York on February 11th, 1926.

The trial court found that the antimony was shipped from Hamburg within the contract time and that the contract was a c. i. f. contract. When the antimony arrived in New York, the buyer refused to accept it.

The invoice, receipt for freight, bills of lading and other documents were not forwarded by the seller to the purchaser as required under a c. i. f. contract but were retained by the seller and tendered to the buyer in New York after the goods had arrived. The insurance policies were never tendered. The bills of lading were through bills of lading and did not contain the name of the buyer as assignee. The insurance policies were issued to bearer "for account of whom it may concern." The seller, by failing to forward the shipping documents and insurance policies to the buyer, failed to carry out the

obligation placed on a seller under a c. i. f. contract and thereby placed his own construction upon the contract. (1 Williston on Sales [2d ed.], p. 606.)

The contract as written did not conform to the regular c. i. f. contract form. Under such a contract, the insurance should be for the benefit of the buyer as the title passes on shipment and the risk of the voyage is on the buyer. Here the provision of the contract was " Insurance — For account of sellers." The terms of the contract as to payment were also in conflict with the terms of a c. i. f. contract. The contract of sale reads " Pay-ment — Net cash against shipping documents payable upon arrival of steamer."

Postponement of the time of payment alone would not prevent the contract from being a true c. i. f. contract as a provision for future payment of the price would not affect the vesting of title. Here, however, was more than a postponement of time of payment of the price and in effect an agreement that shipping documents were not to be forwarded but to be presented after arrival of the steamer, manifesting an agreement that if the steamer did not arrive, no payments were to be made and clearly indicating that the risk of the voyage was on the seller. So also the words " No arrival, no sale " are repugnant to the idea of a c. i. f. contract.

In *Wessel* v. *Seminole Phosphate Co.* (13 Fed. Rep. [2d] 999, 1003) it is said: " The clause ' no arrival no sale ' has a well understood meaning, viz., that if the goods do not arrive at destination, the buyer acquires no property in them and does not become liable to the sellers for the price. (*Harrison* v. *Fortlage*, 161 U. S. 57; *Moore* v. *W. R. Grace & Co.*, [C. C. A. 4th] 287 Fed. Rep. 103.) "

In view of the fact that a c. i. f. contract has a definite, well-understood meaning in commercial life and that under such a contract title passes upon delivery to the carrier, the payment of the carrying charges and the

prompt forwarding to the buyer of the bill of lading, invoice, insurance policies and receipt showing the payment of carrying charges, it seems clear that the contract in question is not a straight c. i. f. contract and that title did not pass as it would if the instrument were a c. i. f. contract. The provisions " Insurance — For account of sellers;" " Payment — Net cash against shipping documents payable upon arrival of steamer " and " No arrival, no sale," in connection with the conduct of the seller in failing to promptly forward the documents, indicate that the letters c. i. f. written under the agreed price to be paid for the goods referred only to the price and meant that the seller was to pay the freight and insurance. (*Dwane* v. *Weil,* 199 App. Div. 719 at 732; affd., 235 N. Y. 527.)

The letters c. i. f. in the contract created an inference that the instrument was in fact a c. i. f. contract. The express terms of the contract were, however, utterly inconsistent with such inference. The express terms must prevail, and the letters c. i. f. must be limited and applied to the price and not to the passing of title.

The respondent seeks to escape the effect of the express terms of the contract and his failure to comply with the terms of a c. i. f. contract on the ground that the testimony establishes that the contract was the kind of c. i. f. contract which the parties had in mind, and the kind in common use by merchants in New York city engaged in that kind of business. The testimony relied upon falls far short of establishing such a contention. It is also urged that the letters c. i. f. were typewritten while the words " No arrival, no sale " were part of a printed form. The case of *Dwane* v. *Weil* (*supra*) is relied upon as establishing the principle that in such a situation the printed words must be disregarded and the contract treated as a true c. i. f. contract. No doubt that case would be authority for respondent's position if that were the only conflict in terms appearing.

In the contract in question the words " Payment — Net cash against shipping documents payable upon arrival of steamer " were also typewritten, as was the provision that insurance should be " for account of sellers." Those clauses which were inconsistent with a c. i. f. contract taken in connection with the conduct of the seller in failing to promptly forward the documents clearly distinguish the case at bar from the case relied upon.

The finding that the instrument constituted a c. i. f. contract was a conclusion of law without evidence to support it. As title to the goods was not transferred, an action for the purchase price cannot be maintained under subdivision 1 of section 144 of the Personal Property Law.

The judgment of the Appellate Division and that of the trial court should be reversed and a new trial granted with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.