## WARNER BROS. & CO., Limited, v. ISRAEL.
### No. 115.

Circuit Court of Appeals, Second Circuit.
Jan. 16, 1939.

Baer & Marks, of New York City (Joseph M. Proskauer, Donald Marks, and Jacob P. Aronson, all of New York City, of counsel), for appellant.

Coudert Brothers, of New York City (Frederic R. Coudert and Percy A. Shay, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, a British corporation, has sued to recover the unpaid remainder of the purchase price of four lots of sugar it sold to the defendant, a New York citizen residing in the City of New York. Jurisdiction based upon diversity of citizenship with the required amount in controversy was made to appear. Trial was by court.

The suit is upon four causes of action which are all alike. As decision upon the first will control as to the other three, it alone will be discussed. The basis of the dispute between the parties is not factual but is centered upon the meaning as a matter of law of a written contract they entered into at New York on April 19, 1934 for the purchase by the defendant from the plaintiff of one thousand tons of Philippine Islands centrifugal sugar. The sugar was then in the Philippines. The contract bore the heading "Philippines—C. I. F. Terms" —and the decision upon this appeal turns upon whether it was what is known as a c. i. f. contract with the well-known legal incidents of such an undertaking or whether the duty rested upon the seller to make actual delivery of the sugar before it was entitled to be paid the purchase price in full.

The seller, acting pursuant to the provisions of the contract, shipped the sugar from the Philippines to the buyer in New York City on the S. S. Belgium Maru on May 10, 1934, under a bill of lading; obtained insurance for the benefit of the buyer; and sent a draft with the documents attached for 95% of the purchase price less freight to a bank in New York City at which the buyer had established an irrevocable credit. The draft was duly honored. Afterwards the ship entered New York harbor with the sugar which was in all respects in the quantity and condition called for by the contract. Before the ship arrived at New York, however, the Jones-Costigan Act, 7 U.S.C.A. § 608 et seq., became effective and the sugar became subject to its provisions. The sugar quota, fixed for the Philippine Islands for the year 1934, was filled before this sugar arrived and it was placed in a bonded warehouse by the defendant where it remained until later released. The defendant not only denies its liability for the remainder of the purchase price on the ground that the plaintiff breached the contract by failing to deliver the sugar but has filed a counterclaim for damages it suffered because of a drop in the price of the sugar while it was held in bond.

The appellant rightly insists that the nature of the contract into which the parties entered is not to be determined alone upon what they saw fit to call it but from the substance of the agreement they made. Hyman, Michaels Co. v. Fox, 2 Cir., 298 F. 440. The designation of the contract as one of the kind known as c. i. f. but created an inference that it was one of that character and that inference would be overcome by express provisions showing that the parties intended otherwise. Cundill v. Millhauser Corp., 257 N.Y. 416, 178 N.E. 680.

Under a c. i. f. contract the seller receives a purchase price payable as the parties agree and for that consideration is bound to arrange for the carriage of the goods to their agreed destination, for insurance upon them for the benefit of the buyer, and either to pay the cost of the carriage and insurance or allow it on the purchase price. When this has been done the seller has fully performed and is entitled to be paid upon delivery of the documents to the seller regardless of whether the goods themselves have arrived at their destination or ever will. A. Klipstein & Co. v. Dilsizian, 2 Cir., 273 F. 473. It has been said that a c. i. f. contract is one for the sale of documents relating to goods rather than a sale of the goods. Arnhold Karberg & Co. v. Blythe, Green Jourdain & Co., 1916, 1 K.B. 495. This, though perhaps an unduly broad generalization, serves to emphasize the distinctive character of such a contract. As the goods

which constitute the subject matter are really the substantial part of the transaction it seems more realistic to treat such a contract as one under which the title to the goods passes to the buyer upon the delivery of documents alone; and that is so because the requisite antecedent acts of the seller are, when followed by delivery of the documents, a complete performance of the contract by the seller. See Thames & Mersey Marine Insurance Co. v. United States, 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann.Cas.1915D, 1087.

Certain details set forth in this contract are relied upon by the appellant to show that the seller was bound to make actual delivery of the sugar to the buyer at New York, the port to which shipment was to be made as events proved, though that port was not unequivocally designated in the contract itself. One of these is the provision for determination of the price upon several factors named which included "net delivered weights"; another is that "no sugar (was) to be delivered below 93 degrees unless on discount terms mutually satisfactory to buyer and seller"; another that settlement of each shipment (was) to be made on final tests; and another that "delivery (was) to be tendered ex-vessel at a customary safe wharf or refinery at New York, Philadelphia or Baltimore to be designated by buyers: * * *".

■ These clauses do show that the purchase price was subject to adjustment on the basis of the quantity and quality of the sugar when it reached its destination and one of them designates more specifically than a named port the point to which the sugar should be carried under the contract of affreightment the seller was bound to make. The language of these clauses presupposes the actual arrival of the sugar at its destination. But even so, they deal only with an adjustment of the purchase price and with a condition of the contract of affreightment to be arranged by the seller whereby the carrier should take the sugar to a suitable discharging point to be designated by the buyer. They must be read in their context with the other terms of the contract and given such effect as the contract as a whole shows that the parties intended.

Since the sugar was so carried and was in such condition that no price adjustment was necessary, all the requirements of these clauses were in fact fulfilled unless delivery of the sugar to the buyer was necessary and not made.

■ For the moment we will accept the buyer's contention that there was no delivery of the sugar to him at the point of destination and confine the inquiry to whether or not delivery was necessary, not as a matter of performance by the carrier of its contract, but as a matter of performance by the seller of the contract of sale upon which it has sued. In order to become entitled to payment of the purchase price under the ordinary c. i. f. contract, of course, such delivery of the goods would not be a condition precedent to be performed at the risk of the seller. Nor is it made so merely because the obligation to contract for the carriage is expressed in the form of delivery of the goods at a designated place. American Sugar Refining Co. v. Page & Shaw, Inc., 1 Cir., 16 F.2d 662. Conversely, if the parties agreed that payment in full for the sugar should be made if the sugar was duly shipped as the contract of purchase required and it failed to arrive at destination for any cause after shipment, potent evidence that the contract was intended to be the c. i. f. contract it was labelled would be afforded. And this contract did contain such an agreement as follows:

"In the event of non-arrival of this sugar arising from loss of vessel or any other cause after shipment has been made in conformity with contract stipulations; payment for any remaining balance of invoice account, not previously drawn against under letter of credit, to be made on the scheduled, or original approximate, due date of arrival of steamer(s) at discharging port—based on shipping weights and tests. In the event of non-arrival and no discharging port having been designated by the buyers, New York to be understood as the port of discharge and the approximate due date of steamer at New York to be taken".

This specific provision making payment due regardless of the arrival of the sugar at destination shows plainly that the parties did not intend to, and did not, make actual delivery of the sugar to the buyer a condition upon the seller's right to be paid the purchase price in full. Consequently, it must be held that the seller made full performance by shipping the sugar and delivering the documents as required by the terms of the contract of sale; that the contract was in substance as well as in name a

c. i. f. contract which passed the title to the buyer without delivery to him of the sugar itself; and that the actual receipt of the sugar was thereafter at the risk of the buyer.

Since we take this view of the legal effect of the contract, we find it unnecessary to decide whether delivery was tendered ex vessel and accepted by the buyer despite the government restrictions upon the use to which the buyer could immediately put the sugar.

Judgment affirmed.