RONRICO CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103859. Promulgated July 31, 1941.

*Douglas D. Felix, Esq.*, for the petitioner.
*F. L. Van Haaften, Esq.*, for the respondent.

**OPINION.**

ARUNDELL: The parties have agreed that $19,660.94 preproduction expenses claimed as a deduction by petitioner are not deductible, and that "other expenses" of $2,095.25 and directors' compensation of

$3,309 claimed by petitioner as deductions are deductible. In the event our decision is that petitioner received income from sources within the United States, these two last named expenses are to be allocated in accordance with the allocation made in the deficiency notice herein.

The principal issue in this case is whether the petitioner, a foreign corporation, had gross income from sources within the United States during the taxable year on which it is taxable under sections 231 (a) and 119 of the Revenue Act of 1934. The respondent proposes to tax petitioner on its revenues from the sale of its Ronrico rum to McKesson & Robbins, Inc., alleging that the sales from which the income arose were made in the United States. Both parties seem agreed that the place of the sale indicates the geographical source of the income, *Compania General* v. *Collector*, 279 U. S. 306. Thus the narrow point of contest is: Where, viewing the contracts, orders, and conduct of the parties thereunder, did the sales of petitioner's rum take place?

At the outset, we may discard as without significance the circumstance that negotiations leading to, and the execution of, the agreements, transpired in this country. No sale was effected by these transactions; they were merely preliminary to the actual sales and are important only in that the substance of the contracts governed the conduct of the parties in their more significant dealings. These contracts employ terms of well recognized commercial usage and provide for c. i. f. sales. By this term it is understood that the seller shall place the goods to be sold aboard a common carrier, prepay the freight, procure proper insurance on the goods, deliver the bill of lading to the buyer, and collect a lump price which includes freight and insurance costs which the seller has paid. Under such contracts title to the goods and the risk involved pass to the buyer at the point of shipment provided the shipper has complied with the requirements set out. *Thames & Mersey Insurance Co.* v. *United States*, 273 U. S. 19; Williston on Sales (2d ed. 1924), sec. 280c; *Commissioner* v. *East Coast Oil Co.*, 85 Fed. (2d) 322, 323. The buyer is obligated thereupon to pay the agreed price when the documents are delivered to him in proper form, even though they arrive before the goods. *Arctic Ice & Coal Co.* v. *Southgate*, 287 Fed. 48; *Seaver* v. *Lindsay Light Co.*, 233 N. Y. 273, 276; 135 N. E. 329.

Sales under the agreement in the instant case followed the c. i. f. pattern provided. Orders were transmitted by the purchaser to the petitioner in Puerto Rico indicating the quantity of rum desired, the point of destination and, in most instances, the vessel to be used in shipment. The petitioner in filling these orders appropriated to them rum which was kept in bulk, and it bottled, packed, and shipped the quantity ordered. It procured the necessary shipping documents

and insurance and forwarded these to the purchaser. The sale was thereupon consummated. The petitioner had then completed its performance of the contract of sale and was entitled without more to be paid by the purchaser. The final acts essential to the sale—the shipment of the goods and the forwarding of the documents—thus took place in Puerto Rico, and it was there that we must regard the sale as made.

The present case, so far considered, is largely similar to *East Coast Oil Co., S. A.*, 31 B. T. A. 558; affd., 85 Fed. (2d) 322. There the taxpayer, a Mexican corporation, sold oil under c. i. f. contracts for shipment and use in the United States. We held that since the sales were completed in Mexico the profits therefrom were not from sources within the United States. It is there stated:

* * * These sales were made under c. i. f. contracts (often judicially defined) ; that is, contracts in which the agreed price includes cost of goods, insurance upon them during transit, and the freight from point of shipment. Under such contracts, the seller has performed his part when he has loaded the goods on the carrier, secured the insurance, and forwarded to the purchaser the proper shipping documents. At that time, and at the place of shipment, title passes to the purchaser; thereafter the goods, and the risks, are his. The record shows that petitioner fully performed in Mexico all its obligations under these contracts. It follows that property in the oil passed in Mexico to the purchasers, and the sales were there made. Consequently, the profits from those sales, made without the United States, are not subject to the tax respondent seeks to impose.

An added circumstance in the present case requires some mention. The bills of lading and insurance policies in all save two of the sales here in question, unlike those in the strict c. i. f. transaction, were made out in the name of the shipper or to his order, thereby leaving in him, after shipment, title to the goods which otherwise would have passed then. Strictly considered, therefore, title to petitioner's rum did not pass in these transactions until the delivery of the bills of lading to the buyer in the United States. It is well recognized that where this method of dealing is followed only for the purpose of giving some security to the seller, it does not prevent the passage of beneficial ownership and risk in the goods to the buyer at the point of shipment. *Harper* v. *Hochstim*, 278 Fed. 102, 104; *Mee* v. *McNider*, 109 N. Y. 500; 17 N. E. 424; *Adams* v. *Grundy & Co.*, 252 Mass. 135; 147 N. E. 598; *Ruttonjee* v. *Frame*, 205 App. Div. 354; 199 N. Y. S. 523; *Smith Co., Ltd.* v. *Moscahlades*, 193 App. Div. 126; 183 N. Y. S. 500; Williston on Sales (2d ed. 1924), sec. 280 c-e. In the present case the agreements provided for c. i. f. sales. The documents were discounted, forwarded and paid by the purchaser, usually before the arrival of the goods. These circumstances indicate that the parties did not intend to accomplish a sale of the goods at the point of destination. The ownership was the purchaser's from and after the

time of shipment and payment was made, not at the time of the arrival of the goods but earlier, when the documents were received. Cf. *Cundill* v. *A. W. Millhauser Corporation*, 257 N. Y. 416; 178 N. E. 680.

Considering these facts it must be concluded that the parties did not intend, by taking the documents in the shipper's name, to change the time when ownership customarily passes, and accordingly the conclusion which we have reached above is not altered.

Accordingly, our holding on the issue stated must be for the petitioner.

As the petitioner made no sales to anyone in the United States other than to McKesson & Robbins, Inc., it follows that it had no income from sources within the United States. Accordingly, an alternative issue as to liability for excess profits tax need not be decided.

*Decision will be entered for the petitioner.*