## DIXON IRMAOS & CIA. LTDA. v. CHASE NAT. BANK OF CITY OF NEW YORK.

District Court, S. D. New York.

May 31, 1943.

Bigham, Englar, Jones & Houston, of New York City (J. Joseph Noble, of New York City, of counsel), for plaintiff.

Mudge, Stern, Williams & Tucker, of New York City (Randolph H. Guthrie, of New York City, of counsel), for defendant.

BURKE, District Judge.

Pursuant to instructions from its correspondent, Banque de Bruxelles, Brussels, Belgium, The Chase National Bank on April 8, 1940, issued two irrevocable letters of credit to Dixon Irmaos, a Brazilian cotton exporting firm. Under the credits the Chase Bank agreed to honor drafts drawn by Dixon Irmaos at 90 days sight for sums not exceeding the amounts of the credits, if presented at The Chase Bank in New York on or before May 15, 1940. The credits provided that full sets of bills of lading and documents evidencing shipment c. i. f., Ghent/Antwerp, should accompany the drafts. Dixon Irmaos shipped two lots of cotton to its customer in Belgium via the S. S. Mar del Plata and sent drafts and invoices covering both lots to the Guaranty Trust Company of New York, together with a letter of instruction as to presentation of the drafts and documents under the credits. These were presented to the Chase Bank on May 15, 1940. Belgium and Holland were invaded by the armed forces of Germany on May 10, 1940. The Chase Bank refused to honor the drafts stating as to each draft three grounds of refusal, only two of which are material to this suit, i. e. that one copy of the bill of lading was missing and that freight was deducted from the invoice, whereas the credit called for a c. i. f. shipment. The cotton never arrived at its destination and Dixon Irmaos has not been paid. Dixon Irmaos sues here to recover on the drafts.

The Guaranty Trust Company presented with each draft one bill of lading

out of a full set of two, together with a letter of guaranty in lieu of the missing bill of lading, whereby the Guaranty Trust Company agreed to hold the Chase Bank harmless from consequences which might follow from acceptance of the draft without a full set of bills of lading. The first question for decision here is whether that was compliance with the requirement of the credits. The plaintiff argues that one copy of a bill of lading with a letter of guaranty of a prime New York bank is, in reality, a full set of bills of lading according to a well-established custom among New York banks and exporters of accepting the available copies of a bill of lading and a guaranty in lieu of the missing bills of lading. Such evidence may be considered, according to plaintiff's argument, not to vary the terms of the credits but to show how the phrase "full set of bills of lading" is used and interpreted in the trade and thus to show the import of the term as used in the credits. Cf. Nicoll v. Pittsvein Coal Co., 2 Cir., 269 F. 968; Eames v. H. B. Claflin Co., 2 Cir., 239 F. 631; Mutual Chemical Co. v. Marden, Orth & Hastings Co., 235 N.Y. 145, 151, 139 N.E. 221; Thomas v. Scutt, 127 N.Y. 133, 141, 27 N.E. 961. Whether or not evidence of this custom or usage might otherwise be considered, in my view of the case such consideration must be excluded because the credits themselves provided "Unless otherwise expressly stated, this credit is subject to the Uniform Customs and Practices for Commercial Documentary Credits fixed by the Seventh Congress of the International Chamber of Commerce and certain Guiding Provisions". When usage or custom is considered in relation to the terms of a contract it is done upon the theory that the parties contracted with the usage or custom in mind to the end that in construing the contract the court may arrive at what the parties intended by the words they used. With such proof contracting parties may be held to have inferred that they would be bound by such usage. In issuing the credits, however, it is evident that the Chase Bank had certain definite customs in mind and that those were the ones included in the document referred to in the credits. In view of this, I think there is no room for the inference that other customs not referred to may be considered as having been in the minds of the officials of the Chase Bank responsible for the language of the credits. "An expression in the contract of one or more things of a class implies the exclusion of all not expressed, although all would have been implied had none been expressed." Manners v. Morosco, 2 Cir., 258 F. 557, 560.

The second question presented is whether deduction of the freight from the invoices was a deviation from the requirement of the credits calling for c. i. f. shipments. As to this plaintiff contends that the term c. i. f. means the cost of the merchandise, cost of insurance and cost of freight, that according to general and accepted practice in the trade, under a c. i. f. shipment, freight may be either prepaid or deducted from the invoices and that in either case the seller pays the freight. The defendant argues that under the definition of the term c. i. f. in "American Foreign Trade Definitions", incorporated by reference in the credits, the seller must "pay freight charges sufficient to carry goods to agreed destination" and that this means to prepay and does not allow the freight to be deducted from the invoices. The evidence establishes that there is no generally accepted custom or practice in the commercial world under a c. i. f. shipment as to the manner of payment of the freight. It seems to be optional with the seller, whether he shall prepay it or deduct it from the invoice. The courts have taken a similar view. Thames & Mersey Ins. Co. v. U. S., 237 U.S. 19, 35 S.Ct. 496, 59 L.Ed. 821, Ann.Cas.1915D, 1087; Warner Bros. & Co. v. Israel, 2 Cir., 101 F.2d 59; A. Klipstein & Co. v. Dilsizian, 2 Cir., 273 F. 473. The defendant however urges that the New York Court of Appeals has held otherwise in Cundill v. Millhauser Corp., 257 N.Y. 416, 178 N.E. 680. I think there is no ground for the contention. In the Cundill case the court said at page 420 of 257 N.Y., at page 681 of 178 N.E.: "This court in Seaver v. Lindsay Light Co., 233 N.Y. 273, 276, 135 N.E. 329, has defined a c. i. f. contract as follows: 'The meaning of the letters "c. i. f." in an executory contract is * * * well understood in the commercial world. They mean the cost of the merchandise, insurance thereon, and freight charges to point of destination. * * * Unless there is something in a c. i. f. contract to indicate to the contrary, the seller completes his contract when he delivers the merchandise called for to the shipper, pays the freight thereon to point of destination, and forwards to the buyer

bill of lading, invoice, insurance policy, and receipt showing payment of freight.'" In the latter case the court cited as authority for its view of the meaning of the letters c. i. f. Thames & Mersey Ins. Co. v. U.S. supra and Klipstein & Co. v. Dilsizian, supra. There is no reason to suppose that the New York Court of Appeals intended to hold that the term c. i. f. had a different meaning than it was held to have in the Thames case and the Klipstein case. The defendant's contention amounts, therefore, to the proposition that the term c. i. f. as defined in "American Foreign Trade Definitions" means something different as to the manner of payment of freight than the generally accepted meaning of the term in the trade and its meaning as defined by the courts. In "American Foreign Trade Definitions" there is contained the following provision:

"10. The seller may desire to quote a price covering the cost of the goods, the marine insurance on the goods, and all transportation charges to the foreign point of delivery. In this case, the proper term is:

" 'C. I. F. (named foreign port)'

"Under this quotation:

"A. Seller must

"(1) make freight contract and pay freight charges sufficient to carry goods to agreed destination".

Under this definition I think the words "pay freight charges" are used in direct relation to the quoted price and only in the sense that the seller must include in the quoted price the cost of the freight and not necessarily that he must prepay it. There is no more ground for holding that under the definition the freight must be prepaid than there is for the view that the New York courts are not in accord with the generally accepted meaning of the term in the trade. I hold, therefore, that the requirement of the credits calling for a c. i. f. shipment meant that the seller had the option of either prepaying the freight or deducting it from the invoice and that the defendant's refusal to accept the drafts upon the ground that the invoices showed a deduction of the freight was a repudiation of its credits.

Findings of fact and conclusions of law are filed herewith. The complaint is dismissed.