Per Curiam.

The facts in connection with this transaction, so far as the documentary evidence is concerned, are fully set forth in the dissenting opinion of Callahan, J., and need not here be repeated.
The primary question in this case is when title passed to the goods in controversy. In the absence of a specific provision on that point, the question of when title passes is primarily one the light of the surrounding circumstances. The rules for of intention to be gathered from the terms of the contract in *699 ascertaining that intention, which are found for example in section 100 of the Personal Property Law, are guides to follow “ Unless a different intention appears The trial court in this case found that “ the intention of the parties was that title to the merchandise was not to pass to the defendant buyer until it received the goods at the address designated in the contract.” While the issue was a narrow and closely contested- one, the record sustains this finding.
Reference is made in the learned dissenting opinion to the uncontradicted testimony on behalf of the plaintiff that he did not undertake delivery to the buyer; that he regarded the goods as the buyer’s property on shipment and that he considered himself entitled to the price. The plaintiff’s uncommunicated thoughts on the subject cannot, of course, affect the legal significance of the transaction; to accomplish this it must be shown that there was some mutual understanding on the subject or something from which such an understanding might reasonably be inferred. It should be noted in this connection that the defendant buyer was, for the most part, precluded from testifying to his understanding of the agreement on the ground that this would be ‘ ‘ varying the terms of the contract. ’ ’ Standing alone, the provision in the letter evidencing the contract of purchase and sale, that payment was to be made on receipt of the merchandise at the specified address of the defendant, might be ambiguous. The retention by the seller of a special property in the goods as security for payment of the purchase price does not prevent passage of title upon delivery to the carrier, ‘ ‘ assuming that the circumstances are such that the property would pass were it not for the requirement of payment of the price before delivery.” (2 Williston on Sales [Rev. ed.], § 279.) This is supported by the case of Netherlands Corp. for Oversea Trade v. Levant Amer. Commercial Co. (124 Misc. 443, affd. 220 App. Div. 759) where the contract provided “ Delivery complete on receipt of goods by the carrier.” Not unnaturally, the clause which provided “ Net cash payable on presentation of shipping documents ” was held to govern payment, not passage of title. The same was held in Glanzer v. Armsby Co. (100 Misc. 476) and in Higgins v. Murray (73 N. Y. 252) in the absence of a specific clause that delivery was complete on receipt by the carrier, where it was apparent from the ordinary rules for ascertaining intention that only a special property was reserved (as by sight draft attached to bill of lading to the order of the shipper) to secure payment of the price.
*700 In Glanzer v. Armsby Co. (supra, p. 480) it was pointed out in an opinion by Lehman, J., that, under the language of the contract, it was not a case of “ no arrival, no pay.” Upon the other hand, the latter was held to have been the intention, and the property in the goods was held not to pass in Cundill v. Millhauser Corp. (257 N. Y. 416) where the agreement showed that it was not a c.i.f. contract even though that symbol was used. It was held that the parties intended that the goods were not to be paid for unless they arrived. In the instant case, the fact that the shipment was on a straight bill of lading (a circumstance found in some contexts to indicate passage of title) shows that here delivery was not to be contingent on payment, and the words “ cash on receipt of merchandise at ” destination point indicate, in the context that if the merchandise were not received there it was not to be paid for, rather than that merely a special property was reserved to secure payment as under an order bill running to the shipper. The indication is that the words concerning payment on receipt were inserted for the protection of the buyer rather than the seller.
All of the surrounding circumstances — the existing strike of which both parties had notice, the absorption of the freight charges by the vendor’s mill into the price of the merchandise, the notation on the bill of lading that the charges were prepaid, the fact that the transaction initially was dependent on the ability or willingness of the mill to ship — all taken together give the provision for payment by the buyer upon receipt of the merchandise a meaning and significance which might not ordinarily attach thereto. Particularly is this so in the light of the testimony of the person in charge of the plaintiff’s business as follows: “ Well, the Associated Lace and the International Yarn Company speculated that the strike will permit the shipment to come through. I did not guarantee that the shipment will come through, and for this reason we did not make any regular terms of payment. We said all right, the regular payments will be in ten days. Mr. Gross objected to that. I said to him, let him pay it after the goods will be offered.”
It was for the trier of the facts to determine what weight he would give to this testimony. We come back, therefore, to the fundamental proposition that when title passed was a question of intention. The finding of the trial court on that point is amply supported by the evidence and should not be disturbed.
The judgment should be affirmed, with costs to the respondent.